IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY 1997 SESSION


FILED

May 23, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9606-CC-00242 |
| | ) | |
| | ) | Washington County |
| v. | ) | |
| | ) | Honorable Arden L. Hill, Judge |
| | ) | |
| ROBERT HARRISON BLEVINS, | ) | (Burglary and vandalism of property valued |
| | ) | under $500) |
| Appellant. | ) | |

For the Appellant:

David F. Bautista
District Public Defender
    and
Debbie Huskins
Assistant District Public Defender
142 East Market St.
Johnson City, TN 37601
(AT TRIAL)

Laura Rule Hendricks
606 W. Main Street
P.O. Box 84
Knoxville, TN 37901-0084
    and
District Public Defender's Office
 for the 1st Judicial District
142 East Market Street
Johnson City, TN 37601
(ON APPEAL)

For the Appellee:

Charles W. Burson
Attorney General of Tennessee
        and
Sandy R. Copous
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

David E. Crockett
District Attorney General
Route 19, Box 99
Johnson City, TN 37601
        and
Kent Garland
Assistant District Attorney General
P.O. Box 38
Jonesborough, TN 37659

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

## O P I N I O N

The defendant, Robert Harrison Blevins, appeals as of right from a jury conviction in the Washington County Criminal Court for burglary, a Class E felony, and vandalism of property valued under five hundred dollars, a Class A misdemeanor. He was sentenced as a career offender to six years in the custody of the Department of Correction for the felony and to eleven months and twenty-nine days for the misdemeanor to be served concurrently, but consecutively to previously imposed sentences. The trial court also imposed fines totaling five thousand, five hundred dollars. On appeal, the defendant states his issues as follows:

> (1) whether the evidence is sufficient to support his convictions;
>
> (2) whether the trial court erred by allowing evidence of the defendant's six prior convictions for burglary to impeach the defendant's testimony;
>
> (3) whether the prosecutor violated the defendant's right to a fair trial by questioning him about his prior convictions and by asking the trial court to clarify the impeachment instruction to the jury; and
>
> (4) whether the trial court erred by denying the defendant's request for relief from payment of fines.

We hold that the evidence is sufficient and that no reversible error occurred.

Officer Jeff Stork of the Johnson City Police Department testified that he and Officer Jeff Jenkins responded to a call reporting a burglary in progress near the Broadway Hotel and Perkins Restaurant at approximately 4:00 a.m. on July 29, 1994. He explained that someone had called Officer Harrell and told him that a person was inspecting the cars and looked like they were getting ready to break into one. Officer Stork stated that he was instructed to park away from the area to avoid scaring anyone off. He said that he and Officer Jenkins exited their vehicles and began walking among the cars parked near the back of the parking lot while Sergeant Michael Harris, who had also arrived, started checking the vehicles in the front of the lot. He recalled hearing

2

Sergeant Harris, who was approximately one hundred and fifty yards away, yell at someone to get their hands up. Officer Stork said that he and Officer Jenkins ran to Sergeant Harris and saw Sergeant Harris moving the defendant from the front door of a gray Nissan and placing him over the hood of the vehicle. He stated that the driver's side window was broken and the door was open.

Sergeant Michael Harris of the Johnson City Police Department testified that he also responded to the call regarding an automobile burglary in progress. He stated that he parked his vehicle in the Perkins Restaurant lot and walked towards the Broadway Motel parking lot. He said that as he walked towards the motel, he continued to listen to his radio. Sergeant Harris testified that Officer Harrell, who was working off-duty at a Wal-Mart located nearby, was talking to an unidentified person on the phone regarding the burglary and was simultaneously communicating to him by radio the information given by the unknown caller. Sergeant Harris said that as he walked in the grass between two motel units, he approached the front of the victim's vehicle. He recalled hearing a loud popping noise and Officer Harrell telling him over the radio that the caller stated that a window had just been broken out. Sergeant Harris said that he then saw the defendant partially in the victim's vehicle and that the passenger's side window was broken. He testified that he could see the defendant because a security light was located very close to the victim's car and explained that the defendant had two-thirds of his body in the car. Sergeant Harris said that the defendant was crouching down with one leg on the ground and the other in the vehicle, attempting to conceal himself. He testified that the defendant had a pocketbook in his hands. Sergeant Harris stated that he then told the defendant at least three times to raise his hands, and when the defendant did not respond, he placed him on the front of the car and arrested him.

On cross-examination, Sergeant Harris admitted that he did not interview any witnesses at the scene and that he did not know the name of the person who called Officer Harrell. He stated that although he did not question him or obtain his name, he spoke to a man who said that he had called Officer Harrell who was at Wal-Mart and told him about the burglary. Sergeant Harris also conceded that he failed to mention at the preliminary hearing that he heard a loud popping noise before seeing the defendant in the victim's car. He acknowledged stating at the preliminary hearing that the caller said that the window was broken with a rock and that he searched the vehicle but did not find a rock. Sergeant Harris also stated that he did not attempt to obtain fingerprints from the vehicle.

Traci Jackson, the victim, testified that she and some friends left Legends during the early morning hours of July 29, 1994, and went to Perkins Restaurant in Johnson City. She stated that she drove her gray Nissan and waited in the car near the entrance while Shannon Vaughn gave their names for the waiting list. The victim recalled hearing the defendant, whom she did not know, talk to Vaughn for a couple of minutes before she got back into the car. She testified that she then parked her vehicle behind Broadway Motel because the restaurant's parking lot was full. The victim stated that the defendant had walked to where she had parked her car and started talking to them. She remembered the defendant telling them that his name was Rob when Vaughn asked him. She said that as they joined their other friends, she realized that she had locked her keys and purse in the car and told her friends. She stated that she attempted to open the doors but both were locked. The victim said that her friends told her that they should eat first and then either get a spare set of keys from her house or call the police. The victim testified that the defendant was present during the entire conversation. She also admitted that the group may have stopped at one of her friend's motel room before walking to the restaurant.

4

The victim testified that they walked to the restaurant and that everyone sat at a booth except the defendant, who sat approximately three booths away with two other men. She recalled seeing the defendant leave after approximately five minutes. She stated that approximately forty-five minutes later, they left and walked to the hotel office to call the police or a locksmith. She said that the clerk told her that the police were already in the parking lot. The victim testified that she saw Sergeant Harris and asked him whether he could assist her in unlocking her car. She said that after talking to Sergeant Harris, she discovered that someone had broken into her car and that the passenger's side window had been completely shattered. She stated that nothing had been removed but that her purse had been moved from the passenger's side floorboard to the passenger's seat. She also stated that she noticed a large rock lying under her seat that afternoon when vacuuming the car. The victim said that she gave a description of the defendant to Sergeant Harris. She also testified that the repair to her window costed one hundred and seventy-nine dollars. The victim stated that she did not give the defendant permission to enter or to damage her car.

_____Chad Hummon, an acquaintance of the defendant, testified that he saw the defendant at Perkins Restaurant on July 29, 1994, at approximately 3:00 a.m. talking to two women parked in a dark-colored car near the entrance to the restaurant. He stated that he waved at the defendant and that he later sat at a table with him. He said that the two women sat with them for awhile before moving to a separate booth. Hummon testified that the defendant was in the restaurant with him for about one hour. He also conceded having a prior conviction for secreting personal property.

The defendant testified that he left Nashville Sound on July 29, 1994, and went to Perkins Restaurant with a group of his friends, including Hummon. He stated that he parked his car in the rear because the lot was full and walked towards the restaurant. He said that he saw Hummon starting to walk into the restaurant as a car

5

drove up to the entrance. The defendant testified that the victim was driving, another woman was in the passenger seat, and a man was in the back seat. The defendant recalled yelling at them and the passenger asking him to come to her side of the car. He said that he then asked them whether they wanted to party and they said that they wanted to eat first. According to the defendant, the passenger got out of the vehicle, he sat in the passenger seat, and the passenger sat on his lap as the victim tried to find a parking space. The defendant testified that the lot was full so they parked in the rear close to his car. He said that the victim stopped at a friend's motel room before they walked to the restaurant.

The defendant stated that he saw Hummon when he entered the restaurant and that he told the victim and her friends that he was going to sit with Hummon instead. He stated that the victim and her friends sat at another table. The defendant testified that he stayed for approximately an hour eating and talking with Hummon. He said that when he left the restaurant, he declined Hummon's offer for a ride and walked to his car. According to the defendant, several uniformed police officers started yelling at him to freeze as he started to step over a curb to go between two cars. He denied being inside a gray Nissan or knowing anything about a rock being thrown through the car's window. He also denied knowing that the victim had locked her keys in her car. The defendant admitted having prior convictions for attempted first-degree burglary in 1987, four counts of third-degree burglary in 1987, aggravated assault in 1989, larceny from a person in 1989, third-degree burglary in 1990, and two counts of robbery in 1990.

In rebuttal, the victim testified that the only other person in her vehicle was Shannon Vaughn who sat in the passenger seat. She also denied that the defendant got into her car and rode with her to park her car.

6

Shannon Vaughn testified that she rode with the victim to Perkins Restaurant and that she saw the defendant when the victim parked in front of the restaurant and she went inside. She said that she was the only person with the victim and that she rode in the passenger's seat. She denied asking the defendant to get in the car with them, that the defendant rode with them to park, and that she sat with the defendant at a booth at the restaurant. She stated that the defendant sat two or three booths away. Vaughn said that she was not sure how long the defendant stayed at the restaurant but recalled that he left before they did.

## I. SUFFICIENCY OF THE EVIDENCE

The defendant contends the evidence is insufficient to establish the defendant's guilt beyond a reasonable doubt for the offenses of automobile burglary and vandalism of property valued under five hundred dollars. Essentially, he asserts that had the trial court excluded evidence of the defendant's prior convictions for automobile burglary, the jury could have found that the defendant's testimony was credible and rejected Sergeant Harris' testimony. The state argues that the evidence overwhelmingly supports the convictions and that the jury was entitled to reject the defendant's testimony as untrue. We hold that there is sufficient evidence to support the convictions.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence, but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

7

Pursuant to T.C.A. § 39-14-402(a)(4), a person commits burglary by entering an automobile without the effective consent of the owner with the intent to commit a felony or theft. Vandalism is defined as knowingly causing damage to or destroying real or personal property of another without the owner's effective consent. T.C.A. § 30-14-408(a).

In the light most favorable to the state, the evidence shows that Sergeant Harris discovered the defendant bending down in the passenger seat of the victim's car holding the victim's purse in his hands. Also, a rock was found underneath the seat, and the passenger's side window was broken. Although the defendant testified that he was merely stepping over a curb to walk between two cars when several officers ordered him to freeze, the jury was entitled to reject the defendant's claim and accredit the testimony of the state's witnesses. Under these circumstances, we conclude that ample proof existed to allow a rational trier of fact to conclude that the defendant was guilty beyond a reasonable doubt of both burglary and vandalism of property valued under five hundred dollars.

## II. EVIDENCE OF PRIOR CONVICTIONS

Next, the defendant claims that the trial court abused its discretion by allowing evidence of the defendant's prior burglary convictions to impeach his credibility. He argues that because the prior convictions involved the same crime for which he was tried, the prejudicial effect far outweighed any probative value for credibility. The defendant asserts that the state should have been limited to using convictions other than the burglary convictions for impeaching the defendant. In the alternative, he contends that the six prior burglary convictions should have been described as six convictions for crimes involving dishonesty rather than using the term burglary. The state argues that the trial court properly allowed the evidence of the defendant's prior convictions. We agree.

8

The admissibility of evidence is a matter within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion. State v. Harris, 839 S.W.2d 54, 66 (Tenn. 1992). Pursuant to the conditions and procedures set forth in Tenn. R. Evid. 609, the credibility of the accused may be attacked by presenting evidence of prior convictions. One condition requires that the crime either be a felony or a crime involving dishonesty or false statement. Tenn. R. Evid. 609(a)(2). Also, the trial court must find that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. Tenn. R. Evid. 609(a)(3). In determining the probative value of the prior convictions, the trial court must assess the similarity between the crime on trial and the crime underlying the impeaching conviction. State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992). The trial court must next analyze the relevance the impeaching conviction has to the issue of credibility. Id.

Before trial, the state notified the defendant of its intent to use the following convictions to impeach the defendant's credibility at trial: (1) four counts of third-degree burglary in 1987, (2) bail jumping in 1987, (3) attempted first-degree burglary in 1987, (4) aggravated assault in 1989, (5) larceny from a person in 1989, (6) third-degree burglary in 1990, and (7) two counts of robbery in 1990. The defendant filed a motion in limine to exclude evidence of the defendant's prior convictions due to the similarity of the offenses to the charged offense of burglary of an automobile. In its ruling on the defendant's motion in limine, the trial court held that the bail jumping conviction was inadmissible. It also concluded that the defendant's remaining prior convictions could be introduced to impeach the defendant's credibility if he testified because the offenses of burglary, robbery and larceny directly related to the defendant's truthfulness and the probative value on his credibility was not outweighed by any undue prejudice.

9

The defendant relies upon Tennessee case law that has held that evidence of the defendant's conviction for an offense similar to the one on trial should not be introduced for impeachment purposes because there is too great a danger of it improperly showing a propensity to commit that type of crime. See, e.g., State v. Roberts, 703 S.W.2d 146, 147 (Tenn. 1986) (in aggravated assault case, could not show prior assault and battery conviction); Long v. State, 607 S.W.2d 482, 486 (Tenn. Crim. App. 1980) (in murder assault case, could not show prior second degree murder conviction). However, the fact that a prior conviction involves a similar crime for which the defendant is being tried does not automatically require its exclusion. As previously noted, the trial court must analyze the prior conviction and the offense on trial to determine whether the conviction's probative value on credibility is outweighed by the danger of unfair prejudice on the substantive issues. See Tenn. R. Evid. 609(a)(3); State v. Farmer, 841 S.W.2d at 839.

In this case, the trial court considered the similarity between automobile burglary and the defendant's previous convictions for burglary, robbery and larceny. It correctly concluded that the felony convictions were for crimes of dishonesty, thus lending greater weight to their probative value regarding credibility. See State v. Miller, 737 S.W.2d 556, 559-60 (Tenn. Crim. App. 1987) (burglary); State v. Caruthers, 676 S.W.2d 935, 941 (Tenn. 1984) (robbery); State v. Hardison, 705 S.W.2d 684, 686 (Tenn. Crim. App. 1987) (petit larceny).

Also, the defendant made his credibility an important issue by denying any wrongdoing and asserting legitimate conduct. Under these circumstances, we are not inclined to question the trial court's allowing all the convictions for the purpose of impeachment. Thus, although the prior burglary convictions are similar to the offense on trial, we hold that the trial court did not abuse its discretion in concluding that the

10

convictions' probative value on credibility outweighed any danger of unfair prejudice to the defendant.

The defendant contends in the alternative that the trial court should have limited references to his previous burglary convictions to his having six prior convictions for crimes involving dishonesty. We note that the case upon which he relies, in which this court allowed the trial court's use of such a procedure, did not receive the blessing of our supreme court. See State v. Ross Jones, No. 01C01-9405-CR-00176, Davidson County (Tenn. Crim. App. Feb. 8, 1995), app. denied (Tenn. May 1, 1995) (concurring in results only). In any event, Jones did not hold that the trial court is required to limit the reference to prior convictions as the defendant requests. Rather, it only held that the trial court's use of such a procedure was not an abuse of discretion in that case. In similar fashion, we believe that the circumstances in the present case do not reflect an abuse of discretion by the trial court in not limiting any references to the defendant's previous convictions to felonies involving dishonesty.

### III. PROSECUTOR CONDUCT REGARDING IMPEACHMENT

The defendant asserts that he was denied the right to a fair trial because the prosecutor engaged in misconduct by the manner in which he questioned the defendant about prior burglary convictions being for automobile burglaries. The defendant also contends that the prosecutor improperly requested that the trial court instruct the jury regarding the proper use of evidence of the defendant's prior burglary convictions as its last instruction although an identical instruction had been given earlier. The state argues that the actions of the prosecutor do not rise to the level of misconduct.

First, we note that the defendant did not object at the time of the prosecutor's question regarding automobile burglaries nor did he include this issue in

11

his motion for new trial. Also, although he objected at the time of the jury instruction in question, it was not included as an issue in his motion for new trial. Pursuant to Rule 3(e), T.R.A.P., an issue is considered waived for appellate review purposes if it is not specifically included in the motion for new trial, but is an issue for which the result would be a new trial. Such is the case before us. Moreover, in the context of plain error, we see nothing that affects the substantial rights of the defendant. See Tenn. R. Crim. P. 52(b).

After the defendant acknowledged on cross-examination that he was convicted in 1987 for four counts of third-degree burglary, the prosecutor asked him if the convictions were for automobile burglaries. The defendant replied, "No, I don't think so." Needless to say, to the extent that the question was for the purpose of eliciting underlying facts of the former convictions, it was improper. See State v. Morgan, 541 S.W.2d 385, 389 (Tenn. 1976); Long v. State, 607 S.W.2d at 485. However, the defendant's negative response ended the inquiry and the matter was never mentioned again. Under these circumstances and with the strong evidence against the defendant, we do not believe that the question affected the jury verdicts to the defendant's prejudice.

As for the jury instruction claim, the defendant complains about the prosecutor getting the trial court to repeat the instruction relating to considering evidence of prior convictions only on the issue of credibility. After the trial court gave its instructions to the jury, the prosecutor stated that it had failed to instruct the jury regarding both the specific offenses for which the defendant had previously been convicted and the proper consideration of them relative to credibility. The prosecutor requested that the trial court instruct the jury accordingly, which it did. However, the trial court had already instructed the jury in such a fashion.

Obviously, the trial court should not have instructed the jury twice relative to the specific prior convictions of the defendant. However, there is no showing that the prosecutor intentionally sought to influence the jury by having the instruction given a second time, immediately before deliberation. We note as well, that the instructions were an accurate statement of the law that limited the jury in its consideration of the defendant's prior convictions. Again, under these circumstances and the strength of the evidence against the defendant, we do not believe that the prosecutor's request was misconduct or that the trial court's reinstruction affected the jury's verdicts to the defendant's prejudice. See Judge v. State, 539 S.W.2d 340, 344-45 (Tenn. Crim. App. 1976).

## IV. FINES

The defendant argues that the trial court erroneously denied his request to be relieved from the payment of fines totaling five thousand and five hundred dollars. He asserts that because he supports a wife and two children and is uneducated, unskilled and heavily in debt, the trial court should have waived the fines imposed. The state argues that the seriousness of the offense, the need for deterrence and the defendant's extensive criminal background justify the imposition of the fines and that a suspension or reduction of the fine would only depreciate the seriousness of the offense.

At the trial, the jury returned a fine for the burglary at three thousand dollars and for the vandalism at two thousand five hundred dollars, each being the maximum for that class of offense. See T.C.A. § 40-35-11(b)(5) and (e)(1). At the sentencing hearing, no testimony was presented by either party, which left the filed presentence report and the proof at trial for the trial court's consideration. The defendant conceded that he had enough prior convictions to have a career offender status, thereby requiring imposition of the maximum length of sentence for the felony

13

class involved. See T.C.A. § 40-35-108. The defendant was sentenced to eleven months, twenty-nine days for the vandalism offense, to be served concurrently with the burglary sentence.

As for the fines, the record reflects that the parties and the trial court misunderstood the respective roles of the jury and the trial court in imposing the fines. The defendant asked the court to "suspend" the fines and the prosecutor asserted that the state was opposed to a suspension, stating that "that's the jury's part of this, and that's the only part that they're left with." Then the trial court stated:

> Well, it's a way for the jury to speak, but, I don't think the jury when they set that fine understands it's to -- in some instances it's almost impossible to collect, but we'll leave that for a future day.[1] The motion to reduce the fine is respectfully denied.

Each judgment of conviction in this case entered by the trial court states the amount as a "fine assessed by the jury." In this fashion, the record reflects that the parties and the trial court believed that the fine to be imposed as part of the sentence was to be set by the jury. Such is not the case.

Although the jury is to "fix" the amount of the fine and report it with a guilty verdict, it is the trial court that is obligated to impose a fine, if any – not to exceed that fixed by the jury – as part of the sentence. See T.C.A. § 40-35-301(b). The trial court's imposition of a fine, if any, is to be based upon the factors and principles of the 1989 Sentencing Act, such as, prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors, that are relevant to an appropriate, total sentence. See State v. Bryant, 805 S.W.2d 762, 766 (Tenn. 1991). Thus, the trial court may not simply impose the fine as fixed by the jury.

---

[1]The trial court retains jurisdiction, even after final judgment, to modify the payment schedule or to reduce or remit entirely the amount of fines for which the defendant may be obligated. See T.C.A. §§ 40-24-101, -102 and -104.

14

However, we need not remand the case for proper assessment of the fine, because the record before us is sufficient to justify affirming the amount of the fine imposed by the trial court. The presentence report reflects that the twenty-eight-year-old defendant held employment for monthly periods in 1993 and 1994 with four separate employers. No record of employment before 1993 is presented. The report shows that the defendant owns nothing, but claims a debt of four thousand dollars in addition to an unknown amount for child support for a child from a previous marriage. The defendant is married and also supports a two-year-old child who lives with him and his wife. The defendant is a high school dropout who obtained his GED. He claims to be in good physical and mental health, but admitted previously using marijuana about once a week for a few years. He has convictions for robbery, aggravated assault, larceny from the person, burglaries, attempted burglary, and several misdemeanors. In fact, the defendant was on parole when he committed the present offenses.

The defendant contends that his financial status and family needs justify less than the maximum fines. Although indigency may in certain cases justify no fine, as previously stated, it must be considered with the other relevant factors.

> Thus, although the defendant's ability to pay a fine is a factor it is not necessarily a controlling one. We recognize that an oppressive fine can disrupt future rehabilitation and prevent a defendant from becoming a productive member of society. Such results are not usually compatible with the purposes and principles of the 1989 Sentencing Act. However, a significant fine is not automatically precluded just because it works a substantial hardship on a defendant -- it may be punitive in the same fashion incarceration may be punitive.

State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993).

In the past, the defendant has shown little, if any, inclination to meet the needs of his family and children through honest effort. His proven record of disregard for conforming his conduct to the laws of society does not bode well for rehabilitation occurring in the near future. In fact, his compilation of such an extensive record in his

15

ten years of adulthood, by itself, warrants maximum fines for punishment and deterrence.  Relief, if any, from the fines should await assessment under his future conduct and circumstances.  The amount of the fines imposed by the trial court is proper.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____Joseph M. Tipton, Judge

CONCUR:


_____
Jerry L. Smith, Judge


_____
Thomas T. Woodall, Judge

16