# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE

## STATE OF TENNESSEE v. LISA MARIE GARREN

**Direct Appeal from the Circuit Court for Blount County**
**No. C-10185      D. Kelly Thomas, Jr., Judge**

**No. E1999-02420-CCA-R3-CD - Decided**
**April 25, 2000**

A jury found the defendant, Lisa Marie Garren, guilty of misdemeanor theft of property. The proof established that the defendant stole a red Mickey Mouse sweatshirt from Proffitts Department Store. The defendant contends that the evidence is insufficient and that the trial court erred by imposing a one-thousand-dollar fine. We hold that the evidence is sufficient and that the fine is not excessive.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIPTON, J., delivered the opinion of the court, in which WADE, P.J., and OGLE, J., joined.

Raymond Mack Garner, District Public Defender, Maryville, Tennessee (At Trial); Julie A. Rice, Knoxville, Tennessee (On Appeal), for the appellant, Lisa Marie Garren.

Paul G. Summers, Attorney General and Reporter; Patricia C. Kussman, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Edward P. Bailey, Jr., Assistant District Attorney, for the appellee, State of Tennessee.

## OPINION

The defendant, Lisa Marie Garren, appeals as of right from her conviction by a jury in the Blount County Circuit Court for theft of property valued under five hundred dollars, a Class A misdemeanor. The defendant received a suspended sentence of eleven months, twenty-nine days, on probation and was fined one thousand dollars. She contends that the evidence is insufficient to support her conviction and that the trial court erred by approving the jury's fine. We affirm the judgment of conviction.

At trial, Terry Askin testified that he is the Loss Prevention Manager for Proffitts Department Store in Foothills Mall. On January 21, 1997, he was patrolling the store dressed in plain clothes when he noticed the defendant acting suspiciously. The defendant made a lot of eye movement and was watching Liz Best, the sales associate in the Juniors Department. The defendant looked at Mr. Askin a couple of times as well. She was accompanied by her teenage niece, Sarah, and was pushing a baby in a stroller. Two large Sears bags were hanging on the stroller. Mr. Askin testified that the

bags were "fairly empty" and slightly translucent, revealing the color of items inside.

Mr. Askin testified that the defendant selected two black sweatshirts, one red Mickey Mouse sweatshirt, and two pair of Bongo jeans and laid them on the stroller. All items were on hangers, and the defendant and her niece took the stroller with the items on top into the fitting room. Several minutes later, the defendant's niece left the fitting room, picked up a gray top on a hanger, and carried the top into the fitting room. The defendant was in the fitting room for a total of fifteen minutes. When she and her niece exited, Mr. Askin saw the defendant shove a red item into one of the Sears bags. The defendant handed her niece two black sweatshirts, a gray top, and one pair of jeans, which the niece then placed on the rack. The defendant went to the counter and exchanged the remaining pair of jeans with a pair she had in her bag. The defendant and her niece then went into the mall.

Mr. Askin testified that he had his detective check the fitting room for the red sweatshirt but that it was not found. Mr. Askin followed the defendant into the mall, and the defendant turned around and asked Mr. Askin why he was following her. Mr. Askin explained to the defendant that he needed to get the sweatshirt she had in her bag. Mr. Askin said that a mall security guard then approached them and witnessed what happened. Mr. Askin said the defendant replied that she did not know what he was talking about. The defendant became irate and stated that she was not a thief and did not have a red sweatshirt. Mr. Askin testified that he had not previously mentioned that the sweatshirt was red. He said that he could see the sweatshirt through the bag. He took the bag off the stroller and pulled out the Mickey Mouse sweatshirt. Mr. Askin said that the shirt had a price tag on it when the defendant took it into the fitting room but that the price tag was missing when he pulled it out of the bag.

Mr. Askin testified that he took the defendant and her niece to his office at Proffitts and instructed another employee to call the police. He found children's jeans in one of the Sears bags, and the defendant told him she had exchanged the jeans earlier at Sears. After speaking with a Sears employee, he determined that the jeans were not stolen. The defendant was very uncooperative and would not sign a statement. She claimed to have purchased the sweatshirt at another store but could not produce a receipt. Mr. Askin testified that the defendant's niece stated that her family had a lawyer in Florida who would "sue the pants off" him. Mr. Askin testified that although shoplifting suspects are usually arrested at the store, the defendant was not arrested because they could not find anyone to pick up the defendant's baby. He said the police officer suggested that the defendant be released and that a warrant would be taken out against her the next day. Mr. Askin stated that although he could not technically tell the jury that the defendant did not have a red sweatshirt in her bag upon entering the store, he saw the defendant enter the fitting room with a red sweatshirt and leave without it being placed on a rack.

Liz Best testified that she was working as a sales associate in the Juniors Department at the time of the incident. She did not see the items that the defendant took into the fitting room. When the defendant left the fitting room, the defendant's niece placed jeans and tops on a rack. Ms. Best exchanged Bongo jeans for the defendant, and the defendant had a receipt for the jeans. After the defendant left the area, Ms. Best checked the jeans the defendant's niece had placed on the rack and

found two top hangers stuffed down the leg of one pair of jeans.

The defendant testified that she purchased a red Mickey Mouse sweatshirt from Proffitts in Athens about two weeks before the incident. She said that she purchased the sweatshirt with her Proffitts charge card. She went to Foothills Mall on January 21 to exchange children's jeans at Sears and to exchange her Bongo jeans at Proffitts because they had a hole in them. She said that she brought the Mickey Mouse sweatshirt with her because she thought she might exchange it for something better. She tried on two or three pair of jeans and several tops, but she did not find anything for which she wanted to exchange the sweatshirt. Her niece, Sarah, had gone into the fitting room with her to try on clothes. The defendant testified that before Sarah left, she gave Sarah all the clothing she had tried on to return to the racks, except one pair of Bongo jeans. She then left the fitting room after Sarah, went to the cash register, and exchanged her jeans.

The defendant testified that as she was walking through the mall, someone said something from behind her. She turned around and saw Mr. Askin. She testified that when she asked him what he had said, he replied, "yes, it's too late to ditch it." She said that when she asked him what he meant, he told her it was too late to ditch the merchandise. She said she asked him why she would do such a thing, and he replied, "Because it's not yours." She said that she asked him who he was and that he told her he was a manager at Proffitts. She testified that she then pulled everything out of her bag and told him that it was all paid for but that Mr. Askin grabbed all the merchandise and claimed that it was his. The defendant said that she showed Mr. Askin her receipt but that he told her receipts meant nothing. She said he started to crumble up the receipt, but she grabbed it from him. The defendant admitted that she did not have her Proffitts charge card statement nor the cancelled check showing payment of the bill.

The defendant testified that she went with Mr. Askin to the Proffitts office and that Mr. Askin cursed at her. She said that she denied stealing anything and that she finally got Mr. Askin to call Sears to verify that the children's jeans were not stolen. She said that Mr. Askin accused her of stealing the Bongo jeans as well until the sales clerk verified that she had exchanged them. She said that an officer was called in to arrest her but that when Mr. Askin was out of the room, she showed the officer the sweatshirt and her receipt. She said that the sweatshirt still had the price tag on it. She said that the officer told her he was going to let her go. The defendant said that when the officer escorted her out of the room, she looked for her niece and baby, who were in the restroom. She said that Mr. Askin clapped his hands and said, "We've got them now." She said that he stated that he knew it was Sarah all along and that he had four women check the bathroom, but nothing was found. She testified that she went to Proffitts the next day to speak with Vice President Jim Pratt because she wanted her sweatshirt returned. She testified that her niece has since moved to Virginia and that she is unable to contact her.

The defendant's mother, Marie Bivens, testified that in January 1997, before the defendant's arrest, she accompanied the defendant to Proffitts in Athens. She said that the defendant bought a red Mickey Mouse sweatshirt and used a credit card for the purchase.

# I. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence is insufficient to support her conviction. She argues that the evidence does not show that she is the person who took the sweatshirt but instead points to her niece. She further argues that the state failed to prove that the sweatshirt was stolen. The state contends that the evidence supports the defendant's conviction.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. <u>See</u> <u>State v. Sheffield</u>, 676 S.W.2d 542, 547 (Tenn. 1984); <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

Mr. Askin testified that he saw the defendant enter the fitting room with a red sweatshirt and that as she was leaving, he saw her stuff a red item into her shopping bag. The defendant did not return the red sweatshirt to a clothes rack when she left nor was it found in the fitting room. Instead, it was found in the defendant's shopping bag after she left the store. The defendant could produce no receipt or credit card statement to support her claim that she purchased the sweatshirt at another Proffitts. We hold that the evidence is sufficient to support the defendant's conviction.

# II. FINE

The defendant contends that the trial court erred by imposing a one-thousand-dollar fine. She argues that the jury was confused about the fine amount and that the trial court imposed the fine without considering the facts of the case or the principles of sentencing. The state contends that the fine was properly imposed.

The record reflects that when the jury returned a guilty verdict, the following colloquy occurred between the jury foreperson and the trial court:

THE COURT: And did the jury impose a fine?
FOREPERSON: Minimum fine.
THE COURT: Well, zero is the minimum fine.
FOREPERSON: Zero is the minimum? A thousand dollars.

The record reflects that the trial court then asked each juror to raise his or her hand to verify that they had agreed to a guilty verdict and a one-thousand-dollar fine and that all jurors raised their hands. The defendant's attorney then told the trial court that he was unsure whether the jurors had agreed upon a one-thousand-dollar fine, and the trial court again asked them to raise their hands if they had so agreed. The record shows that all the jurors raised their hands.

The defendant first contends that the record is unclear whether each juror approved of the fine. She argues that the record shows that the jury foreperson simply created the fine on his own, without consulting the other jurors. However, our reading of the record leads us to conclude that although the jury may have been confused about the minimum fine, the jurors all agreed upon a fine of one-thousand dollars. The trial court ensured that the jurors had agreed upon that fine by asking

them twice to verify it. We do not believe that the jury's setting of the fine was improper.

Next, the defendant contends that the trial court imposed the jury's recommended fine without considering the facts of the case and the principles of sentencing. She argues that this was her first offense in over eight years, the item stolen was worth only thirty-six dollars, and her potential for rehabilitation is great.

Although the jury is to "fix" the amount of the fine and report it with the guilty verdict, it is the trial court's obligation to impose a fine not to exceed that fixed by the jury as part of the sentence. See Tenn. Code Ann. § 40-35-301(b); State v. Blevins, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997). The trial court's imposition of a fine should be based upon the factors and principles of the 1989 Sentencing Act, such as prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors relevant to an appropriate, total sentence. See Bryant, 805 S.W.2d at 766.

Although the trial court did not place its findings on the record, we do not necessarily view this to require a de novo review with no presumption of correctness. See generally State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998) (noting that for misdemeanor sentencing, a trial court need not place its findings on the record but need only "consider the principles of sentencing and enhancement and mitigating factors . . . ."). We believe that the record supports the trial court's imposition of the fine. The record shows that although the defendant does not have a lengthy criminal history, she does have one prior conviction for driving under the influence. In addition, although the defendant claims that her potential for rehabilitation is great, we note that at no time has the defendant accepted responsibility for stealing the sweatshirt. See State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994) (holding that a defendant's lack of truthfulness and failure to accept responsibility for his crimes are circumstances germane to his rehabilitation potential). With regard to the defendant's ability to pay, the record does show that the defendant was declared indigent. However, this does not preclude the imposition of a fine. This court has previously noted that although "indigency may in certain cases justify no fine . . ., it must be considered with the other relevant factors." Blevins, 968 S.W.2d at 895. The record shows that the defendant earns approximately one thousand dollars per month in wages and receives four hundred dollars per month for child support. We do not believe that the defendant has shown the fine, well below the maximum allowed, to be excessive.

In consideration of the foregoing and the record as a whole, we affirm the judgment of conviction.