IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 12, 2001

## STATE OF TENNESSEE v. TRACY T. BOSTIC

**Appeal from the Circuit Court for Williamson County
Nos. II-699-193-A, II-699-194     Timothy L. Easter, Judge**

---

**Nos. M2000-02941-CCA-R3-CD,
M2000-03220-CCA-R3-CD
Filed May 13, 2002**

---

The Williamson County Grand Jury returned separate, one-count presentments against the defendant, Tracy T. Bostic, charging him with felony sale or delivery of a controlled substance, in violation of Tennessee Code Annotated section 39-17-417, and with felony sale or delivery of a counterfeit controlled substance, in violation of Code section 39-17-423. The defendant was tried and convicted on the controlled substance charge, and the trial court imposed an incarcerative sentence of nine years as a Range II, multiple offender and assessed a $25,000 fine. The defendant elected to forego a trial on the counterfeit controlled substance charge, and he entered a "blind" guilty plea to that offense, for which he received a three-year incarcerative sentence as a Range II, multiple offender, which was ordered to be served consecutively to the nine-year sentence. On appeal, the defendant contests the sufficiency of the evidence upon which his controlled substance conviction rests, and he complains about the length and manner of service of his combined sentences and about the $25,000 fine. Based upon our review of the video record in this case and our consideration of the briefs of the parties and applicable law, we affirm the defendant's convictions and the incarcerative portion of his sentences, but we modify the $25,000 fine imposed to $15,000.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed in Part, Modified in Part.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOE G. RILEY and JOHN EVERETT WILLIAMS , JJ., joined.

John H. Henderson, District Public Defender, for the Appellant, Tracy T. Bostic.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Mary Katharine Harvey, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

In 1998, the Williamson County Housing Authority solicited the help of the 21st Judicial District Task Force to deal with drug-related problems in a certain neighborhood in the Franklin area of the county. Joey Kimble, the Task Force Director, recruited a confidential informant from outside the area to make controlled drug purchases that would lead to subsequent arrests and prosecutions. The defendant, Tracy T. Bostic, was arrested and convicted of selling cocaine as part of this Task Force operation.

The confidential informant, Rhonda Bass, testified at the defendant's trial as did the Task Force agents who supervised her activities and the special agent with the Tennessee Bureau of Investigation who tested the cocaine sold to Ms. Bass. In the light most favorable to the state's case, the evidence at trial established that Ms. Bass had operated as a confidential informant for nearly fifteen years. She testified that her cousin was a Drug Task Force Director in Jasper, Tennessee. Beginning when Ms. Bass was 18 years old, her cousin taught her street language, how to make undercover drug buys, and how to dress and act as a witness in court. Ms. Bass explained that she wanted to work in law enforcement and had hoped to "work her way" into becoming an officer by serving as a confidential informant.[1]

Ms. Bass testified that she had worked for approximately 25 different law enforcement agencies in at least three states. In Middle Tennessee alone, she had worked for ten agencies. The arrangement between Ms. Bass and Task Force Director Kimble in this case was for her to move into the drug-plagued neighborhood, learn about the drug trafficking, and make controlled buys. The Task Force and the Housing Authority arranged for Ms. Bass to live in subsidized housing in the problem neighborhood. Ms. Bass and the Task Force agents testified that she was compensated for her services on a contingent fee basis. That is, for every purchase of a misdemeanor amount of controlled substances, Ms. Bass received $50 in cash; for every purchase of a felony amount of drugs, she was paid $100. The money that Ms. Bass earned as a confidential informant was not the sole source of her income. During the time that she assisted the Task Force, she worked through a temporary employment agency for a pharmaceutical company.

Ms. Bass moved into the Franklin residential area in early January 1999. On February 10, 1999, Task Force Director Kimble and Task Force Agent Tim Hawn met with Ms. Bass to set up controlled buys. Ms. Bass stated that no particular individual was targeted. Rather, she was instructed to make purchases from people out selling drugs that evening. The Task Force agents searched Ms. Bass and her vehicle, and they outfitted her with a wireless radio transmitter. They also provided her with $50 in marked money for drug purchases.

Because the Task Force agents were well known in the community, they were unable to follow Ms. Bass at close range. They parked several blocks away while Ms. Bass drove into a

---

[1] On cross examination, Ms. Bass testified that she had "retired" from working as a confidential informant for law enforcement.

residential area on Acton Street off of Natchez Street. The agents could not see what was happening, but they monitored and tape recorded the events via the transmitter worn by Ms. Bass. The agents testified that it was dark and cloudy with a drizzling rain at this time.

Ms. Bass testified that after driving into the area, she spotted the defendant out walking. The defendant, who was known to Ms. Bass, waved his hands to flag her down. Ms. Bass spoke to the defendant through her open car window. She asked the whereabouts of "Bug" and "Rooster." The defendant replied that "Bug" was not around and that "Rooster" was in jail. The defendant told Ms. Bass that he could get drugs. Ms. Bass told the defendant that she was not interested in buying from him. The defendant offered to "beep his boy," but Ms. Bass complained that it would take too long. Ms. Bass then commented "doesn't anyone around here have any," at which point the defendant said that "Mac" did. The defendant said that he would check on matters, and he entered a nearby house. When the defendant returned, he had cocaine with him. Ms. Bass rejected the cocaine and told the defendant that it was not worth $50. The defendant persisted, and Ms. Bass finally told him to get the person who owned the drugs. The defendant took the cocaine back into the house, and Ms. Bass had no further dealings with him. Shortly thereafter, a male individual, unknown to Ms. Bass, came out of the house with the cocaine. They "haggled" over the price until "Mac" agreed to sell the cocaine for $35. Ms. Bass concluded the sale, drove away, and met the Task Force agents at a prearranged location. She turned over the cocaine and the remaining money, and she and her car were again searched.

A tape recording of the monitored drug sale was introduced at trial and played for the jury. As the trial judge correctly observed at one point, the quality of the tape is poor.

After the sale and upon further investigation, "Mac" was identified as Charles Johnson. The substance that Mr. Johnson sold to Ms. Bass was tested and determined to be .2 grams of crack cocaine. Once the Task Force completed its undercover drug operation in the Franklin area, the defendant and Mr. Johnson were arrested and charged as co-defendants with the February 10 sale of the cocaine to the informant. Because the weight of the cocaine involved was less than .5 grams, the defendant and Johnson were charged with the felony Class C variety of unlawful sale or delivery of a controlled substance. *See* Tenn. Code Ann. § 39-17-417(c)(2) (Supp. 2001).

The defendant did not testify at trial. He defended on the basis that the state could not show that he was criminally responsible for the cocaine sale that the co-defendant made to the confidential informant. The jury did not agree, and it found the defendant guilty of the sale or delivery of cocaine. The jury further assessed a fine of $25,000, which the trial court later approved. After the trial concluded, the defendant was still facing a separate charge of Class E felony sale or delivery of a counterfeit controlled substance, in violation of Code section 39-17-423. *See* Tenn. Code Ann. § 39-17-423(a) (1997). That charge emanated from a January 31, 1999, sale to a Task Force informant. On September 18, 2000, the defendant pleaded guilty to that charge without the benefit of a sentencing agreement with the state.

## I. Sufficiency of the Evidence

The defendant maintains that the state's evidence was insufficient as a matter of law to prove that he knowingly sold or delivered cocaine to the confidential informant or was criminally responsible for the sale. The defendant does not elaborate, but we discern his position to be that summoning "Mac" to negotiate the cocaine sale, after Ms. Bass had indicated her unwillingness to deal with the defendant, is inadequate to sustain his conviction. We must disagree.

When an accused challenges the sufficiency of the evidence, an appellate court surveys the evidentiary landscape, including the direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational fact finder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); Tenn. R. App. 13; *State v. Williams*, 657 S.W.2d 405 (Tenn. 1983)*; State v. Thomas*, 775 S.W.2d 838, 842 (Tenn. Crim. App. 1988).

It is not our role on appeal to replay or reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are all entrusted to the fact finder. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). We are required to extend to the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *Cabbage*, 571 S.W.2d at 835.

To establish the defendant's guilt of the Class C drug offense, the state was required to prove that he knowingly delivered or sold less than .5 grams of cocaine. Tenn. Code Ann. § 39-17-417(a)(2), (a)(3), (c)(2) (Supp. 2001). Our statutes assign criminal responsibility if an "offense is committed by the person's own conduct, by the conduct of another for which the person is criminally responsible, or by both." *Id*. § 39-11-401 (1997). One of the ways that a person is criminally responsible for an offense committed by the conduct of another is when, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." *Id*. § 39-11-402(2).

The defendant in this case was not the individual who exchanged cocaine for cash with the confidential informant. Nonetheless, he was hardly an innocent bystander. *See generally State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) ("mere presence of a person in an area where drugs are discovered is not, alone, sufficient"); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987) ("mere association with a person who does in fact control the drugs . . . is insufficient to support a finding that the person possessed the drugs"). The defendant hailed the confidential informant as she was driving through the neighborhood. He offered to sell her cocaine and to "beep his boy" to get the drugs. When the confidential informant declined to deal with the defendant, the defendant went to find "Mac" so a sale could be conducted. The evidence is

overwhelming that the defendant intended "to promote or assist" the sale of cocaine to the confidential informant, and when his direct sales efforts proved futile, he then "solicit[ed], direct[ed], aid[ed], or attempt[ed] to aid" the co-defendant with the illegal sale.

The evidence is sufficient to support the conviction.

## II. Sentencing

The defendant's remaining issues relate to sentencing.

When the length, range, or manner of service of a sentence is disputed, this court undertakes a *de novo* examination of the record with a presumption that the determinations reached by the trial court are correct. Tenn. Code Ann. § 40-35-401(d) (1997). The presumption, however, is predicated "upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "The burden of showing that the sentence is improper is upon the appellant." *Id.* Should the record fail to reflect the required consideration by the trial court, review of the sentence is purely *de novo*. *Id.* On the other hand, should the record show that the trial court properly took into account all pertinent factors and that its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In arriving at a sentence, the trial court, at the conclusion of the sentencing hearing, determines the range of sentence and then decides the specific sentence and the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered on enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-210(b) (Supp. 2001), 40-35-103(5) (1997); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

The record in this case reflects that the trial court engaged in a thorough review of the relevant principles and considerations in establishing the terms of the incarcerative sentences. Accordingly, its sentencing determinations are entitled to the presumption of correctness.

Regarding the defendant's convictions for sale of a controlled substance and sale of a counterfeit controlled substance, the trial court found him to be a Range II, multiple offender. The defendant does not challenge that finding on appeal, and we agree with the trial court's assessment. The trial court then considered and applied three enhancement factors to each conviction: enhancement factor (1) that the defendant has a history of prior criminal offenses in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40-35-114(1) (Supp. 2001); enhancement factor (8) that the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, *id.* 40-35-114(8); and enhancement

factor (13) that the defendant had committed the present offense while on release status, *id*. 40-35-114(13).  The information in the presentence report, which the defendant does not dispute, shows that he has five prior drug-related convictions, four of which are felony convictions.  Also, while on probation for a prior conviction, the defendant tested positive for cocaine and marijuana use, never supplied proof of employment, and failed to report for several months.  Finally, as reflected in the presentence report, the defendant was serving a probationary sentence for an earlier sale of a counterfeit controlled substance at the time he committed the instant offense.  On appeal, the defendant advances no reasons why these enhancement factors are inapplicable.  Rather, he generically complains that his sentences are excessive.  We find no basis to disturb the trial court's findings and determinations relative to the length of the defendant's sentences.

The defendant also complains, in the same general way, that his three-year sentence for sale of a counterfeit controlled substance should not run consecutively to his nine-year sentence for sale of cocaine.  Before consecutive sentencing can be ordered, the trial court must first determine that one or more of the statutorily enumerated criteria of Code section 40-35-115 exist.  Notwithstanding proof of these criteria, a sentencing court retains the discretion of imposing consecutive sentences.  On appeal, the decision that flows from the trial court's discretion is assigned great weight, provided the court correctly applied the principles of consecutive sentencing.  Moreover, in determining whether the trial court providently exercised its discretion, the fairness of the resulting sentence under all the circumstances must be ensured.  *See Ashby*, 823 S.W.2d at 169.

There are seven statutory criteria in Code section 40-35-115 for imposition of consecutive sentencing.  They are:

(1)  The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;

(2)  The defendant is an offender whose record of criminal activity is extensive;

(3)  The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist . . .;

(4)  The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

(5)  The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor . . .;

(6) The defendant is sentenced for an offense committed while on probation; or

(7)  The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b)(1)-(7) (1997).

Here, the trial court found that the defendant qualified for consecutive sentencing on grounds (2) and (6).  The presentence report cogently shows that the defendant is an offender whose record of criminal activity is extensive.  The report also documents the defendant's probationary status at the time he committed the two drug offenses involved in this case.  The trial court acted well within its authority in ordering consecutive sentencing in this case.

The last sentencing complaint is that the $25,000 fine is excessive in light of the defendant's indigency.  At the sentencing hearing, no evidence was introduced relative to the fine, and no financial information is included in the presentence report.  Although the trial court issued extensive findings in connection with the length and manner of service of the defendant's sentences, the only given reason for approving the jury's recommended fine was, "I find that that's the will of the people of Williamson County, and I will not come behind that."

In *State v. Bryant*, 805 S.W.2d 762, 766-67 (Tenn. 1991), the supreme court held that the state constitution does not prohibit appellate review of fines.  *See* Tenn. Const. art. VI, § 14.  Fines are generally assessed by the jury unless the defendant waives this constitutional protection.  Tenn. Code Ann. § 40-35-301 (1997); *State v. Mahoney*, 874 S.W.2d 627, 630 (Tenn. Crim. App. 1993).

"Although the jury is to 'fix' the amount of the fine and report it with a guilty verdict, it is the trial court that is obligated to impose a fine, if any -- not to exceed that fixed by the jury -- as part of the sentence." *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997).  The trial court's imposition of a fine is to be guided by the factors of the 1989 Sentencing Act, including "the defendant's ability to pay that fine, and other factors of judgment involved in setting the total sentence." *State v. Lewis*, 978 S.W.2d 558, 567 (Tenn. Crim. App. 1997) (quoting *State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993)).  A trial court, in other words, may not abdicate its judicial responsibility for imposing a fine by parroting whatever fine is fixed by the jury.  *See Blevins,* 968 S.W.2d at 895.

A defendant's ability to pay is usually a factor in the establishment of fines, albeit not automatically "the" controlling factor.  Tenn. Code Ann. § 40-35-207(a)(7) (1997); *see Marshall*, 870 S.W.2d at 542 (a defendant's ability to pay "is not necessarily a controlling [factor]").  "Trial and appellate courts must also consider other factors, including prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors that are relevant to an appropriate, overall sentence." *State v. Alvin Ray Taylor*, No. M1999- 02566-SC-R11-CD. slip op. at 5-6 (Tenn., Nashville, Mar. 19, 2002).  The gravity of the underlying offense may also support a punitive fine.  *See State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996).

When, as occurred in this case, the trial court fails to set forth any findings of fact concerning the defendant's ability to pay a fine, our review is *de novo* without a presumption of correctness. *See State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *Lewis*, 978 S.W.2d at 567 (no findings by trial court regarding fine imposed for misdemeanor, simple possession of marijuana conviction); *Alvarado*, 961 S.W.2d at 153 (no findings by trial court regarding fine imposed for felony convictions).

The state maintains that the fine in this case is appropriate based on the defendant's prior criminal history, his previous failures at rehabilitation, and his ongoing criminal conduct while on release status. The state also claims that the record supports a reasonable inference that the defendant probably has unreported financial resources based on his professional drug dealing. We are skeptical that the defendant's drug activities have generated a sizable income, and moreover, the state did not dispute the defendant's indigency status at the trial level. Even if we assume, however, that the defendant lacks sufficient resources to pay the $25,000 fine, our *de novo* review persuades us that a sizable fine still is in order.

The defendant, who was twenty-two years old at the time of sentencing, has demonstrated no willingness to pursue a livelihood through honest work efforts. He has no apparent health-related problems that would interfere with full-time employment. The defendant has a lengthy juvenile record, and past efforts at rehabilitation have been unsuccessful. Furthermore, he continued to engage in criminal activities while on release status and, otherwise, flaunted his disrespect for the terms of his release status. These considerations justify a fine that is punitive.

As for how punitive the fine should be, we note that the trial court ordered a substantial period of incarceration, twelve years as a Range II offender. For that reason, in combination with the defendant's indigency status, we believe that a less punitive fine of $15,000 serves the objectives and principles of our sentencing scheme. Accordingly, we modify and reduce the fine in this case to $15,000.

Having now considered the issues raised on appeal and in accordance with the foregoing, we modify the defendant's fine to $15,000, but in all other respects we affirm the convictions and sentences.

_____

JAMES CURWOOD WITT, JR., JUDGE