IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

AUGUST 1999 SESSION



FILED

September 1, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 02C01-9901-CC-00036 |
| | ) | |
| vs. | ) | Carroll County |
| | ) | |
| O. B. FREEMAN GREEN, JR., | ) | Hon. C. Creed McGinley, Judge |
| | ) | |
| Appellant. | ) | (Aggravated Assault) |
| | ) | |

FOR THE APPELLANT:

RAYMOND L. IVEY
P.O. Box 667
Huntingdon, TN 38344

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

CLINTON J. MORGAN
Counsel for the State
425 Fifth Avenue North
Nashville, TN 37243-0493

ROBERT RADFORD
District Attomey General

ELEANOR CAHILL
Assistant District Attorney General
P.O. Box 686
Huntingdon, TN 38344

OPINION FILED: _____

AFFIRMED

JAMES CURWOOD WITT, JR., JUDGE

**OPINION**

The defendant, O. B. Freeman Green, Jr., appeals his Carroll County Circuit Court conviction of aggravated assault. See Tenn. Code Ann. § 39-13-102(a)(1)(A) (1997). After a trial in which a jury returned a guilty verdict, the trial court imposed a Range II sentence of nine years to be served in the Tennessee Department of Correction. The only issue raised by the defendant in this appeal is whether the trial court erred in allowing the impeachment of the defendant as a witness by the use of past criminal convictions. We affirm the judgment of the trial court.

The conviction is based upon an offense that occurred in the Carroll County jail. On January 2, 1998, the victim, Larry Sherrod, reported to the Carroll County jail to begin serving a DUI sentence. His wife dropped him off at the jail at 6:55 p.m., and the victim was immediately processed into the facility. He was admitted to his assigned enclosure, which held approximately twenty prisoners. He immediately went to a vacant cot and began to make up his bed, when he was approached by the defendant and another prisoner who was not identified. Sherrod testified that the defendant said to him, "I'll make you my bitch." This comment startled the victim, and he stood up. The defendant then hit him twice, once with each fist, in the nose. The victim's nose began to bleed, and he experienced pain and blurred vision. He tried to kick on the door to the enclosure in order to get the jailer's attention, but the defendant came to him again and warned him about summoning the officers into the enclosure. The victim then went to a telephone that was located within the enclosure, called his wife, and asked her to call the jailer to send someone to help him. The victim's wife testified she received the call at 7:15 p.m.

The victim had bled on his shirt and on the floor, and while he was tending to his injury in the bathroom, the defendant began to clean up the blood from the floor. The victim's wife called the jailer, and officers entered the enclosure

2

and took the victim to the hospital. The victim's nose felt crushed, his eyes were puffy and turning black underneath, and he experienced a headache, disorientation, and pain in his face and teeth.

On January 19, 1998, the victim underwent surgery on his nose; however, both the victim and his wife testified that his face remained disfigured because his nose "leans toward the right." As of the time of trial, the victim continued to experience headaches and sinus problems which he had not experienced prior to the injury. A radiologist who x-rayed the victim's nose testified at trial and confirmed that the nose had been broken.

The defendant called two witnesses who were inmates in the victim's enclosure at the time of the offense. Both of these witnesses denied seeing the defendant assault the victim. The defendant testified somewhat erratically that he did not assault the victim and that the victim came into the jail on December 26, 1997, not on January 2, 1998.

The defendant filed a pretrial motion *in limine* and asked the trial court to disallow the use his prior convictions as impeachment evidence. The defendant was convicted in 1985 of rape and kidnapping and in 1988 of five counts of forgery. Prior to the state resting its case at the trial, the trial court announced on the record its findings and ruling on the motion *in limine*. The trial court acknowledged that the prior convictions were "somewhat remote in time," but it found that the date of release from incarceration was within the ten-year period set forth in Tennessee Evidence Rule 609. The trial court then considered whether the danger of unfair prejudice from the use of the convictions for impeachment purposes outweighed the probative value, and the trial judge noted that, based upon the opening statements of counsel[1] and the defendant's cross-examination of the victim, the defendant's

---

[1] Opening statements were not included in the transcript of the evidence.

3

version of the events would be "diametrically opposed to that of the alleged victim." Accordingly, the trial court found that credibility is a "very, very important determinative part of the case." The court found that the danger of unfair prejudice was not great and that the probative value for impeachment purposes outweighed the danger of unfair prejudice. The trial court then instructed the defendant as to his rights regarding his decision to testify.

When the state commenced its cross-examination of the defendant, it impeached him with evidence of all three prior convictions. Immediately following this impeachment, the trial court instructed the jury that if they found from the proof that the defendant had been convicted of a prior crime or crimes, they could consider such evidence only for the purpose of assessing the defendant's credibility and may not use it "as to his guilt for the crime that is on trial."

In this appeal, the defendant challenges only the use of the prior convictions of rape and kidnapping.

The State of Tennessee may use a prior conviction to impeach an accused if the conviction meets the criteria established by rule 609, Tennessee Rules of Evidence. The criteria established by rule 609 are: (a) the prior conviction was for a crime punishable by death or imprisonment in excess of one (1) year or a misdemeanor conviction involving dishonesty or a false statement; (b) less than ten (10) years has elapsed between the date the accused was released from confinement and the commencement of the present prosecution; (c) the state must give reasonable written notice of the particular convictions it intends to use to impeach the accused prior to trial; and (d) the trial court must find the probative value of each conviction on the issue of credibility outweighs its unfair prejudicial effect. Tenn. R. Evid. 609(a)(2)-(3), (b); see State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App.).

4

In the present case the trial court found that the prior convictions were felonies and that less than ten years had elapsed between the date the accused was released from confinement and the commencement of the present prosecution. The trial court further found that the state gave reasonable pretrial written notice of the convictions it intended to use for impeachment purposes. The defendant challenges none of these findings and argues only that the probative value of the evidence of the rape and kidnapping convictions was outweighed by the unfair prejudicial effect.

In determining whether the probative value of a prior conviction to be used to impeach an accused outweighs the unfair prejudicial effect on the issues to be resolved by the jury, the trial court should (a) "assess the similarity between the crime on trial and the crime underlying the impeaching conviction," and (b) "analyze the relevance the impeaching conviction has to the issue of, credibility." N. Cohen, D. Paine, and S. Sheppard, Tennessee Law of Evidence, §609.9 at p. 376 (3rd ed. 1995); see Farmer, 841 S.W.2d at 839. "The standard is not whether there is *any* prejudice to the defendant by allowing the state to use the prior conviction for impeachment, but whether the possible prejudice is outweighed by the probative value of the evidence as to the defendant's credibility as a witness." State v. Roberts, 943 S.W.2d 403, 408 (Tenn. Crim. App. 1996) (italics in original).

In reviewing the trial court's determination, this court "does not re-evaluate whether the probative value of the . . . prior convictions outweighs the possible prejudicial effect it might have had. We only evaluate whether the trial judge abused his discretion . . . ." Id; see also State v. Harris, 839 S.W.2d 54, 66 (Tenn. 1992).

In reviewing the trial court's exercise of discretion in the present case, we readily discern the nexus between the violence implicit in rape and kidnapping and the explicit violence that was shown in the case on trial. "However, the fact that

5

a prior conviction involves a similar crime for which the defendant is being tried does not automatically require its exclusion." State v. Blevins, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997). "[T]he trial court must analyze the prior conviction and the offense on trial to determine whether the conviction's probative value on credibility is outweighed by the danger of unfair prejudice on the substantive issues." Id. In the present case, the court concluded that the probative value weighed heavier in the balance. For the reasons explained below, we hold that this discretionary decision should not be disturbed.

In analyzing this issue, we initially note that the prior convictions were both felonies. Even though the prior convictions' impact on credibility should be considered, Rule 609 does not require as a threshold matter that prior felonies offered for impeachment involve dishonesty or false statement, as is the case with prior misdemeanor convictions. See Tenn. R. Evid. 609(a)(2); Blevins, 968 S.W.2d at 892-93. Second, although violence may be implicit in the prior offenses of rape and kidnapping, the defendant was not on trial in the trial court for either of these offenses. Thus, although the offenses had a similar characteristic, they were not identical. Third, the trial court aptly observed that, because the defendant contradicted the victim's version of the events, the defendant's credibility was a key issue in the trial. Finally, the trial court gave clear and cogent admonitions to the jury concerning the proper use of the impeachment evidence.[2]

We find that the factors referenced above support the trial judge in the exercise of his discretion to allow the impeachment evidence.

For the foregoing reasons, the judgment of the trial court is affirmed.

---

[2] As an aside, we note that the jury necessarily knew that the defendant was incarcerated on January 2, 1998. We attach little significance to this information, however, because obviously the jury could not assume that the defendant's incarceration at that time in the Carroll County jail signified that he had been convicted of an offense.

6

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:


_____
DAVID H. WELLES, JUDGE


_____
JERRY L. SMITH, JUDGE