IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE v. DESHAWN McCLENTON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-02226,27     Joseph B. Dailey, Judge**

---

**No. W1999-00879-CCA-R3-CD  - Decided July 11, 2000**

---

The Defendant, DeShawn McClenton, was convicted by a Shelby County jury of the offenses of aggravated robbery and especially aggravated kidnapping. The trial court sentenced the Defendant as a career offender to thirty years imprisonment for the aggravated robbery conviction and to sixty years imprisonment for the especially aggravated kidnapping conviction, with the sentences to be served consecutively. In this appeal as of right, the Defendant argues (1) that the evidence regarding his identity as the perpetrator was insufficient to support the convictions, (2) that the trial court erred in ruling that his prior aggravated robbery conviction and his three prior attempted second degree murder convictions were admissible to impeach his credibility if he chose to testify, and (3) that the movement and confinement of the victim were essentially incidental to the accomplishment of the aggravated robbery and were therefore insufficient to support a separate conviction for kidnapping. We find no error and affirm the judgment of the trial court.

**Tenn. R. App. 3 Appeal as of Right.  Judgment of the Trial Court Affirmed.**

WELLES, J., delivered the opinion of the court, in which HAYES, J., and GLENN, J., joined.

A.C. Wharton, Public Defender, Garland Erguden, Assistant Public Defender, Memphis, Tennessee, for the appellant, DeShawn McClenton.

Paul G. Summers, Attorney General and Reporter, J. Ross Dyer, Assistant Attorney General, William L. Gibbons, District Attorney General, Jennifer Nichols, Assistant Attorney General, for the appellee, State of Tennessee.

### OPINION

The Defendant, DeShawn McClenton, was convicted after a jury trial of the offenses of aggravated robbery and especially aggravated kidnapping. In this appeal as of right, he raises the following three issues:  (1) whether the evidence of the Defendant's identity as the culprit is sufficient to permit a rational trier of fact to find him guilty beyond a reasonable doubt; (2) whether the trial court erred in ruling that the Defendant's prior convictions of one aggravated robbery and three attempted second degree murders were admissible for impeachment if the Defendant chose to testify; and (3) whether the movement and confinement of the victim were essentially incidental to

the accomplishment of the aggravated robbery and therefore insufficient to support a separate conviction for kidnapping. We find no error in the court below; accordingly, we affirm the judgment of the trial court.

The proof at trial established that on the morning of September 8, 1997, Hazel Valentine and Floria McCollough were readying the Jackson Avenue Mrs. Winner's Restaurant for opening. Around 5:15 a.m., the two women heard a noise as a brick crashed through the drive-thru window. Ms. McCollough, who was working in the front area, turned to look at the window, and she saw a black man with a silver gun trying to enter the restaurant through the drive-thru window. The man had a blue bandana covering the lower half of his face. Realizing that a robbery was occurring, the two women ran from the restaurant and beat on the door of the Wendy's restaurant next door, but they were not heard from inside. They then ran to a nearby Amoco gas station, but the clerk would not let them in. While at the Amoco, the women noticed that the robber had gotten into his van and was driving towards them. They began to run in different directions, and then Ms. Valentine lost her balance and fell.

By this time, the man had arrived at the Amoco in his van. He got out of his van and grabbed Ms. Valentine by the back of the shirt, dragging her and causing her to injure her arms and knees. He pointed the gun at her and told her to "[g]et up and get in the van or I'll kill you right here and now." He put Ms. Valentine in the van and drove her back to Mrs. Winner's, telling her that he wanted her to unlock the store and open the safe. At gunpoint, the man forced Ms. Valentine to open the safe in the restaurant. He then told her to lie on the floor, which she did. After he fled through the back door with the money, Ms. Valentine got up and went back over to the Amoco station.

When the police arrived, Ms. Valentine was able to give a description of the man. She said at trial that she told the police he was a black male of medium weight. At first she testified that the man was five feet two inches or five feet three inches in height; then in her next sentence she clarified, stating, "I'm sorry it was anywhere from a five feet, you know, on -- you know, height, and I told them from a five to like a six one, you know, in between there." She said that the man's hair was "going back." She indicated that she could identify the person even though he was wearing a bandana on the lower portion of his face because she saw the upper part of his face, she saw his eyes, and she heard his voice. A few days later, Ms. Valentine went to the police station to view a line-up. She identified the Defendant as the perpetrator based on his physical appearance and his voice. She also identified the Defendant at trial based on his appearance and his voice. She testified that there was "no doubt at all" in her mind that the Defendant was the person who robbed her at Mrs. Winner's.

Floria McCollough was unable to identify the Defendant as the perpetrator, but she described him as a short, dark-skinned man, who was about five feet six inches or five feet seven inches in height. However, she said that she was "just kind of guessing" about his height because she could only see parts of him through the drive-thru window.

Tracy Loyd, the clerk at the Amoco station, did positively identify the Defendant in court. She said that she "remember[ed] him plain as day just like it was yesterday." Ms. Loyd described

him as "short" and said that his hair was "just like he got it now, but it was back like a little slick like with Jherri-curls. He had like a little ponytail at the back." She explained that by "Jherri-curl" she meant his hair was "kinda [a] little curly."

The defense called one witness, Patricia Sims, a hair dresser at Unisex Styles. Ms. Sims testified that she styled the Defendant's hair on September 9, 1997, the day after the robbery. She remembered the event because as she was styling the Defendant's hair, her water broke and she had to leave for the hospital to deliver her baby. Ms. Sims described the Defendant's hair when he arrived as "packed" or "nappy to his head," like it had not been combed. She said that she began to put a "Jherri-curl" or "Nouveau" style in his hair that day. She did not remember any curl or wave in his hair when he arrived.

## SUFFICIENCY OF EVIDENCE OF IDENTIFICATION

The Defendant first challenges the sufficiency of the identification of him as the perpetrator. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992) (citing State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1976), and State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977)); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Holt v. State, 357 S.W.2d 57, 61 (Tenn. 1962).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914 (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191 (citing Cabbage, 571 S.W.2d at 836). Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. Tuggle, 639 S.W.2d at 914.

The Defendant argues that the evidence was insufficient to establish him as the perpetrator because there was no physical evidence tying him to the robbery and because the witnesses' descriptions of the perpetrator after the robbery conflicted with the description of the Defendant on the presentence report, which lists the Defendant as a man of six feet, weighing two hundred pounds. He points out that all of the witnesses indicated that the perpetrator was short, while he is actually six feet tall. He also points out that the witnesses described him as having a "Jherri-curl" in his hair, while his hairdresser testified that she did not remember any curl in his hair when he came to get a "Jherri-curl" put in his hair.

Notwithstanding any discrepancies in the description of the perpetrator, Ms. Valentine testified that she was certain the Defendant was the person who robbed the Mrs. Winner's. She identified the Defendant in a line-up soon after the robbery, and she identified him again in court. She said her identification was based on his appearance, his weight, and his voice. Ms. Loyd also identified the Defendant during trial as the person she saw by the Amoco.

It is well established that the identity of the defendant as the perpetrator of the crime charged is a question of fact for determination by the jury. See State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). The identification testimony of the victim is sufficient by itself to support a conviction. Id. As stated previously, any conflicts in the testimony must be resolved in favor of the jury verdict. Tuggle, 639 S.W.2d at 914. The jury obviously accredited the identification testimony of Ms. Valentine and Ms. Loyd. Because they positively identified the Defendant as the perpetrator, the evidence is sufficient to support the verdict.

## USE OF PRIOR CONVICTIONS TO IMPEACH

The Defendant next contends that the trial court erred in ruling that his prior aggravated robbery conviction and his three prior attempted murder convictions could be used to impeach his credibility should he decide to testify. Tennessee Rule of Evidence 609(a) provides, in pertinent part:

> For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:
> (1) The witness must be asked about the conviction on cross-examination. . . .
> (2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.
> (3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. . . .

In balancing the probative value verses the prejudicial impact of a prior conviction "a trial court should (a) 'assess the similarity between the crime on trial and the crime underlying the impeaching conviction' and (b) 'analyze the relevance the impeaching conviction has to the issue of credibility.'" State v. Farmer, 841 S.W.2d 837, 839 (Tenn. Crim. App. 1992) (quoting Neil P. Cohen, et al., Tennessee Law of Evidence § 609.9, at 288 (2nd ed. 1990)). However, evidence of a prior conviction which is the same or similar to the current offense is not per se inadmissible; the trial court must analyze the prior conviction and the offense on trial to determine whether the conviction's probative value on credibility is outweighed by the danger of unfair prejudice. See State v. Blevins, 968 S.W.2d 888, 893 (Tenn. Crim. App. 1997); Tenn. R. Evid. 609(a)(3). The trial

court's determination under Rule 609 will not be reversed absent an abuse of discretion. State v. Blanton, 926 S.W.2d 953, 960 (Tenn. Crim. App. 1996).

Here, the trial court conducted a hearing before trial to determine whether the convictions could be used to impeach the Defendant's credibility. The Defendant argued at that hearing and he again argues on appeal that the aggravated robbery conviction was too prejudicial because it was the same offense for which the Defendant was on trial and that the attempted murder convictions were too prejudicial because they showed a propensity for violence and had little relevance to truthfulness. The trial court ruled that the probative value of the convictions outweighed the prejudicial effect, stating,

> I understand your argument with regard to the similarity of the robberies, being an identical offense. And if it were an identical offense which had no probative value, then I would think that your argument would be well-taken and they should not be allowed to use that. But since robbery is just an enhanced form of larceny, I think it is the type of offense that is very probative with regard to the issue of credibility and believability. And, after all, that is the purpose of allowing these prior convictions in anyway.
> So I think that notwithstanding the fact that it is the same offense that he's on trial for, I think the probative value outweighs the prejudicial effect in the robbery situation.
> The other three being attempt murder seconds are felonies that are well within the ten years and they are dissimilar from what he's being tried for today. Therefore, I think those are also admissible.
> Now, those are the types of offenses that, if that were what he was being tried for today, perhaps your first argument would be well-taken. But since they are dissimilar, since they are felonies that are well within the ten years, I think they are also probative and the probative value outweighs the prejudicial effect. And, therefore, I will allow all four to be used for impeachment purposes in the event he takes the stand.

We conclude that the trial court did not abuse its discretion in ruling that the prior convictions were admissible. Although the aggravated robbery conviction was the same type of offense as the offense for which the Defendant was on trial, it was a crime of dishonesty, which lends greater weight to its probative value as to credibility. See Blevins, 968 S.W.2d at 893. The attempted murder convictions were dissimilar to the crimes charged. Granted, the attempted murder convictions would be prejudicial to the Defendant because of the violent nature of the offenses, but the rule allows all felony convictions, whether they involve dishonesty or not, to impeach a witness's credibility. See Tenn. R. Evid. 609(a)(2); Blanton, 926 S.W.2d at 960. Because the present case was dependent entirely on the identification of the Defendant as the perpetrator, the Defendant's credibility as a witness would have been a critical issue. Thus, we cannot say that the trial court's ruling was an abuse of discretion.

SEPARATE KIDNAPPING CONVICTION

Finally, the Defendant argues that the movement and confinement of the victim were essentially incidental to the accomplishment of the aggravated robbery and were therefore insufficient to support a separate conviction for kidnapping. In State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), our supreme court addressed the issue of "the propriety of a kidnapping conviction where detention of the victim is merely incidental to the commission of another felony, such as robbery or rape." Id. at 300. The court reasoned that double jeopardy analysis was inadequate for resolving this issue and focused instead on due process guarantees. See id. at 306. The supreme court announced that in order to resolve the constitutional validity of a separate kidnapping conviction in such cases, courts must determine "whether the confinement, movement, or detention is essentially incidental to the accompanying felony and is not, therefore, sufficient to support a separate conviction for kidnapping, or whether it is significant enough, in and of itself, to warrant independent prosecution and is therefore, sufficient to support such a conviction." Id. It also commented that "one method of resolving this question is to ask whether the defendant's conduct 'substantially increased [the] risk of harm over and above that necessarily present in the crime of robbery itself.'" Id. (quoting State v. Rollins, 606 S.W.2d 828, 830 (Tenn. Crim. App. 1980)).

In making its determination, the supreme court in Anthony observed that "every robbery, by definition, involves some detention against the will of the victim, if only long enough to take goods or money from the person of the victim. This does not mean that the legislature intended that every robbery should also constitute a kidnapping, even though a literal reading of the statute might suggest otherwise." Id.

Several years later, our supreme court again addressed the rule announced in Anthony and clarified that ruling by stating,

> The Anthony decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

State v. Dixon, 957 S.W.2d 532, 534-35 (Tenn. 1997). The court then set forth a two-part test for determining whether a separate kidnapping conviction violates due process. The first inquiry is "whether the movement or confinement was beyond that necessary to consummate" the associated felony. Id. at 535. If that question is answered in the affirmative, then "the next inquiry is whether the additional movement or confinement: (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm." Id. If both prongs are satisfied, then the dual convictions do not violate due process. See id.

After considering the facts of this particular case, we conclude that the movement and confinement of the victim, Hazel Valentine, was beyond that necessary to consummate a robbery. The pursuit and capture of the victim was certainly a significant intrusion on her liberty beyond the restraint which accompanies a robbery. We believe it was significant enough to warrant independent

prosecution for kidnapping. The movement and confinement both prevented the victim from summoning help and increased the victim's risk of harm. See id. Accordingly, the movement and confinement of Hazel Valentine was not essentially incidental to the robbery; it was significant enough, in and of itself, to warrant separate prosecution. See Anthony, 817 S.W.2d at 306.

By throwing the rock through the window of the Mrs. Winner's Restaurant, the Defendant indicated his intent to rob the Mrs. Winner's. When Ms. Valentine and Ms. McCollough ran from the restaurant, the Defendant gave chase. While it may be that the Defendant's only purpose in restraining the victim was to accomplish the robbery, we cannot say that his actions were "merely incidental" to the robbery. He grabbed Ms. Valentine by the back of the shirt, dragged her across the pavement such that she injured her arms and knees, and forced her into his van at gunpoint so that he could transport her back to the restaurant. We believe that the grabbing of Ms. Valentine and the forced transport of Ms. Valentine in the van constituted restraint beyond that necessary to consummate the robbery. Instead of being a situation in which the victim is temporarily restrained during the amount of time it takes for the perpetrator to rob the victim, this is a situation in which the perpetrator took additional steps to pursue the victim after the victim escaped from the restaurant and to further confine the victim at gunpoint. As stated by our supreme court in Dixon, "Anthony and its progeny . . . are not meant to provide the rapist [or robber] with a free kidnapping merely because he also committed rape [or robbery]." Dixon, 957 S.W.2d at 534.

It is clear that the Defendant's actions prevented the victim from summoning help and increased the risk of harm to the victim. Ms. Valentine was running for help when she was forced into the van. The Defendant thus thwarted her attempts to obtain that help. The Defendant's argument that she had already summoned help because the clerk at the Amoco station had seen her is unpersuasive. Other than calling the police, the clerk did not assist or attempt to assist Ms. Valentine. In addition, putting Ms. Valentine into the van and removing her from the public street increased the risk of harm to Ms. Valentine. She was removed from public view where she might have had the opportunity to summon assistance or to escape and was placed out of public view with a person who was threatening to kill her with a gun. Certainly, this increased her risk of harm. Accordingly, we hold that the Defendant's actions in restraining Ms. Valentine constituted a kidnapping and that those actions were not essentially incidental to the accompanying robbery. Therefore, the separate kidnapping conviction does not violate due process. See Anthony, 817 S.W.2d at 306; Dixon, 957 S.W.2d at 534-35.

## CONCLUSION

We hold that the evidence of the Defendant's identity was sufficient to support the conviction, that the trial court did not abuse its discretion in ruling that the Defendant's prior convictions were admissible for impeachment, and that the confinement and movement of Ms. Valentine were not essentially incidental to the accompanying robbery. The judgment of the trial court is affirmed.