# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE
## Assigned on Briefs August 8, 2006

## STATE OF TENNESSEE v. LACOREY DAMONT MCKISSACK

**Appeal from the Criminal Court for Williamson County**
**No. I-8421     Russ Heldman, Judge**

_____

**No. M2005-00905-CCA-R3-CD - Filed January 16, 2007**

_____

A Williamson County Criminal Court jury convicted the defendant, LaCorey Damont McKissack, of selling 0.5 grams or more of cocaine, a Class B felony, and fixed his fine at $20,000. The trial court approved the fine and sentenced the defendant to 11 years in the Department of Correction as a Range I, standard offender. On appeal, the defendant contends that the fine and sentence are excessive. We disagree and affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

John H. Henderson, District Public Defender, for the Appellant, LaCorey Damont McKissack.

Robert E. Cooper, Jr., Attorney General & Reporter; Brian Clay Johnson, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Christina L. Ferrell, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

Williamson County Sheriff's Department Agent Christopher Mobley, assigned to the 21st Judicial District Drug Task Force, was on duty on February 20, 2003, and he arranged for Sylvester Island, a confidential informant who had worked with Agent Mobley and the Drug Task Force on many occasions, to attempt to purchase a controlled substance from the defendant. Agent Mobley, Agent Rick Campbell, and Drug Task Force Assistant Director Bailey Greenwalt met Mr. Island at a prearranged location, where they searched his person and his vehicle, installed a video device in his vehicle, placed a body wire and transmitter on his person, and gave him $100 in $20 bills for the purchase of crack cocaine.

After this meeting, the agents followed Mr. Island's vehicle, constantly maintaining either visual or audio surveillance, to the area near 219 Redick Street, where they purposefully lost

visual contact because of "lookouts" in the area. Mr. Island stopped in front of 219 Redick Street, and the defendant walked to the passenger side of the vehicle. Mr. Island asked to buy cocaine, and the defendant entered Mr. Island's vehicle. The two drove around the block, and while driving, Mr. Island informed the defendant that he wanted to purchase a "'C' note," which was $100 worth of crack cocaine. The defendant asked to see the $100, and Mr. Island complied. The defendant handed Mr. Island "something which was later determined to be [0.6 grams of] crack cocaine" by a Tennessee Bureau of Investigation forensic crime laboratory scientist. Mr. Island asked for the cocaine remaining in the defendant's bag, but the defendant refused. He did, however, offer to sell the remainder to Mr. Island for $30. Mr. Island told the defendant that he should have received all of the cocaine for the $100, but the defendant disagreed, saying that he thought the amount already sold was equal to one gram. Mr. Island returned to 219 Redick Street, and the defendant exited the vehicle.

Mr. Island then immediately returned to the prearranged meeting place, and the agents conducted another search of his person and vehicle. Nothing, other than the purchased cocaine, was found in the search.

Four days after the purchase, Agent Mobley showed Mr. Island a photograph of an unidentified male, and Mr. Island identified the man as "Petway," the person from whom he purchased the cocaine on February 20, 2003.

The jury convicted the defendant of selling 0.5 grams or more of cocaine, *see* T.C.A. § 39-17-417(a)(3) (2003), and fixed a fine of $20,000, *see id.* -417(c)(1). The court approved the fine and sentenced the defendant to 11 years in the Department of Correction as a Range I, standard offender.

The defendant filed a timely notice of appeal and the issue is properly before us for review. On appeal, the defendant contends that the fine is excessive due to his indigency and that his sentence is also excessive. For the reasons set forth below, we disagree and affirm the judgment.

I. FINE

The appellate court has the authority to review fines as a part of the sentence. *State v. Bryant*, 805 S.W.2d 762, 767 (Tenn. 1991). The appellate court's review of the sentence is de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003). The defendant's ability to pay is a factor for the trial court to weigh in reviewing the fine fixed by the jury. *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996). However, it is not a controlling factor.

> An oppressive fine can disrupt future rehabilitation and prevent a defendant from becoming a productive member of society. . . . However, a significant fine is not automatically precluded just because it works a substantial hardship on a defendant – it may be

punitive in the same fashion incarceration may be punitive.

*State v. Marshall*, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993).

Although the jury is to "fix" the amount of the fine and report it with a guilty verdict, it is the trial court's obligation to "impose" a fine not to exceed that fixed by a jury as part of the sentence. *See* T.C.A. § 40-35-301(b); *see also State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997). The trial court's imposition of a fine should be based upon the factors and principles of the 1989 Sentencing Act, such as prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors relevant to an appropriate, total sentence. *See Bryant*, 805 S.W.2d at 766. In the present case, the trial court merely adopted the fines imposed by the jury without further discussion or consideration. Failure to follow the procedures required by the 1989 Sentencing Act results in our reviewing the matter de novo without a presumption that the trial court is correct.

The trial court did not discuss the defendant's financial means or his potential for rehabilitation. In his Uniform Affidavit of Indigency, the defendant stated that he had no source of income. In this document, the defendant also related that he had no assets and had not filed an income tax return. The court declared the defendant indigent and appointed counsel. The record contains no other indication of his financial means.

The record does not support a conclusion that the defendant has the ability to pay a substantial fine. However, as previously noted, a defendant's indigency does not preclude a meaningful fine. According to the defendant's presentence report, he has three prior convictions, including a conviction for selling 0.5 grams or more of cocaine for which he received eight years in the Department of Correction and a $2,000 fine. In addition, the defendant has violated probation, and he committed one of his offenses while on parole. The previous $2,000 fine and eight-year sentence failed to deter him from criminal conduct. Moreover, the record further indicates that the defendant has received extensive carpentry training, which would allow gainful employment once released. In consideration of all the circumstances of this case, including the defendant's personal circumstances, we affirm the fine fixed by the jury and approved by the trial court.

## II. LENGTH OF SENTENCE

The defendant complains that his sentence is excessive. The trial court imposed an 11-year sentence for his Class B felony conviction of sale of 0.5 grams or more of cocaine. *See* T.C.A. §§ 39-17-417, 40-35-112(a)(2) (2003) (establishing a minimum of eight years and a maximum of 12 years for Class B offenses, Range I). The defendant advocates a minimum, eight-year sentence. On appeal, he argues that the two mitigating factors found by the trial court should "cancel . . . out" the two enhancement factors also found by the court.

When there is a challenge to the manner of service of a sentence, it is the duty of this court to conduct a de novo review of the record with a presumption that the determinations made by

the trial court are correct. T.C.A. § 40-35-401(d). This presumption is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the appellant. *Id.* In the event the record fails to demonstrate the required consideration by the trial court, review of the sentence is purely de novo. *Id.* If appellate review, however, reflects that the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The sentencing court must consider (1) the evidence, if any, received at the trial and the sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant wishes to make in the defendant's behalf about sentencing, and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b) & -35-103(5) (2003).[1]

At the sentencing hearing, the trial court found and applied the following enhancement factors to the defendant's conviction:

> (2) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; [and]
>
> . . . .
>
> (9) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community.

---

[1] Effective June 7, 2005, Tennessee Code Annotated sections 40-35-114 and 40-35-210 were rewritten in their entirety. *See* 2005 Tenn. Pub. Acts, ch. 353, §§ 5, 6. These sections were replaced with language rendering the enhancement factors advisory only and abandoning a statutory minimum sentence. *See* T.C.A. §§ 40-35-114 (2005) ("[T]he court shall consider, but is not bound by, the following advisory factors in determining whether to enhance a defendant's sentence"); -35-210(c) ("In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines.").

T.C.A. § 40-35-114(2), (9) (2003).[2]  In addition, the trial court found the following mitigating factors:  (1) The defendant's criminal conduct neither caused nor threatened serious bodily injury, T.C.A. § 40-35-113(1) (2003); and (2) the defendant received his General Education Degree while incarcerated, *see id.* -35-113(13).  The trial judge then weighed both the enhancement and mitigating factors and sentenced the defendant to 11 years in the Department of Correction and also approved the fine.

The defendant admits on appeal that both enhancement factors are "valid." He insists, however,  that the trial court did not weigh properly the enhancement factors against the mitigating factors, and his sentence should, therefore, be reduced to the statutory minimum of eight years.

The trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.  *See* T.C.A. § 40-35-210(f) (2003); *State v. Jones*, 883 S.W.2d 597, 599 (Tenn. 1994).  Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and, then, reduce the sentence as appropriate for any mitigating factors.  T.C.A. § 40-35-210(d), (e).  There is no particular weight assigned to any given enhancement factor by the 1989 Sentencing Act and the "weight afforded mitigating or enhancement factors derives from balancing relative degrees of culpability within the totality of the circumstances of the case involved."  *State v. Moss*, 727 S.W.2d 229, 238 (Tenn. 1986).  In other words, the weight given to any existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of sentencing and its findings are adequately supported by the record.  In this case, our review will be de novo upon the record.  *See State v. Grissom*, 956 S.W.2d 514, 518 (Tenn. Crim. App. 1997).

On balance, we believe that enhancement factors (2) and (9) fully justify increasing the defendant's sentence from eight to 12 years but that the applied mitigating factors justify a reduction of one year.  Thus, we affirm the trial court's judgment.[3]

---

[2]Tennessee Code Annotated section 40-35-114, as amended in 2002 by Public Act 849, § 2(c), effective July 4, 2002, added one enhancement factor and subsequently renumbered all of the original enhancement factors in the statute.  Thus, for the time period during which the defendant's offenses were committed and during which he was sentenced, the enhancement factor pertaining to prior criminal convictions or behavior was *subsection (2)*, and the enhancement factor for a previous history of unwillingness to comply with the conditions of a sentence involving release in the community was *subsection (9)*.  *See* T.C.A. § 40-35-114(2), (9) (2003).  We note that the legislature has, again, recently amended and renumbered the enhancement factors, *see* T.C.A. § 40-35-114 (2006), but these changes became effective for criminal offenses committed on or after June 7, 2005, and do not apply in this case.

[3]At the sentencing hearing, defense counsel informed the judge that the defendant's surname was "Petway'" that he was incarcerated under that name, and that defendant's Social Security Number was different on a previous judgment.  Defense counsel asked the court to note this on the judgment to prevent confusion for the Department of Correction, and the court agreed.  The defendant's Social Security Number on the current judgment is the same as the number on his previous judgment; however, we note that the current judgment fails to list the surname Petway.

_____
JAMES CURWOOD WITT, JR., JUDGE