IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 6, 2020 Session

**STATE OF TENNESSEE v. MICKEY VERCHELL SHANKLIN**

**Appeal from the Circuit Court for Madison County**
**No. 18-854-B        Donald H. Allen, Judge**
_____

**No. W2019-01460-CCA-R3-CD**
_____

A jury convicted the Defendant, Mickey Verchell Shanklin, of the sale of heroin, the delivery of heroin, the sale of fentanyl, and the delivery of fentanyl and assessed fines of $50,000 for the heroin convictions and $25,000 for the fentanyl convictions. The trial court merged the heroin convictions and the fentanyl convictions and ordered the Defendant to serve concurrent terms of thirty years for the heroin convictions and fifteen years for the fentanyl convictions as a Range III, persistent offender at forty-five percent. The trial court also affirmed the total fines of $75,000. On appeal, the Defendant contends that the evidence is insufficient to support his convictions and that the fines are excessive. We remand the case to the trial court for a hearing with regard to the fines. We otherwise affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Reversed in Part; Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which J. ROSS DYER, J., joined. CAMILLE R. MCMULLEN, J., filed a separate dissenting opinion.

Kendall F. Stivers, Assistant Public Defender – Appellate Division (on appeal); and Jeremy B. Epperson, District Public Defender, and Gregory D. Gookin, Assistant District Public Defender (at trial), for the appellant, Mickey Verchell Shanklin.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Jody Pickens, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL AND PROCEDURAL BACKGROUND

### Trial

The Defendant and his co-defendants, Ms. Whitney Marie Sells and Mr. Cedric Peter Hopgood, a.k.a. Cedric Peter Price, were charged with multiple offenses as a result of selling a substance containing both heroin and fentanyl to a confidential informant working with the Jackson-Madison County Metro Narcotic Unit. According to the evidence presented at trial, on September 5, 2018, shortly before noon, officers met with a confidential informant for the purpose of setting up a controlled drug buy. Officers searched the confidential informant and his vehicle and did not find any drugs or weapons. Any cash possessed by the confidential informant was given to officers to hold until the completion of the operation. Officers placed audio and video recording equipment on the confidential informant's person, and the officers were able to monitor the transaction through the audio recording device as the transaction occurred.

The confidential informant attempted to contact one individual several times without success. Investigator Mike Arnold instructed the confidential informant to contact Mr. Hopgood even though Investigator Arnold knew Mr. Hopgood was undergoing dialysis and would be unavailable. Investigator Arnold testified that he wanted the confidential informant to purchase one gram of heroin for $120. Investigator Arnold said that the confidential informant learned from Mr. Hopgood that only one-half of a gram of heroin was available for purchase and that Mr. Hopgood instructed the confidential informant where to go to purchase the drugs. The confidential informant, however, testified that he never discussed purchasing drugs over the telephone and that he normally just said, "I want to come by."

Officers gave the confidential informant $80 in cash to purchase one-half of a gram of heroin. The confidential informant drove his own vehicle to Mr. Hopgood's home where the confidential informant acknowledged that he had used heroin previously. Officers maintained visual contact with the confidential informant while he drove to Mr. Hopgood's home and as he returned to the officers following the transaction. Investigator Arnold testified that the confidential informant did not make any stops between the locations and that no one approached his vehicle.

The confidential informant testified that when he arrived at the house, he knocked on the back door and that Ms. Sells came to the door. The confidential informant told Ms. Sells either that he was there "[t]o get something" or that he wanted to purchase one-half of a gram of heroin. Based on his conversation with Mr. Hopgood, the confidential

informant believed the Defendant would be there, but the Defendant was not at the house. Ms. Sells called someone whom the confidential informant believed to be the Defendant, and the Defendant arrived at the house a short time later. The confidential informant testified that the Defendant gave him what appeared to be heroin and that the confidential informant gave the Defendant the money that the officers had provided to him. The confidential informant testified that the Defendant did not obtain the drugs from inside the house but from his person once he entered the house. Ms. Sells asked the confidential informant for some of the drugs, but the confidential informant declined and left.

A video recording of the transaction was played to the jury and entered as an exhibit at trial. The video showed the confidential informant arriving at the house and knocking on the back door. A woman, whom the confidential informant identified at trial as Ms. Sells, came to the door, and the confidential informant asked for "Mickey." Ms. Sells said "Mickey" should be on his way back to the house and provided the confidential informant with "Mickey's" telephone number. Ms. Sells then offered to call "Mickey" and allowed the confidential informant to enter the house.

The confidential informant told Ms. Sells that he had spoken to "Ced," who stated that he only had "a half" available to purchase and that "Mickey" would be at the home. Ms. Sells made a call during which she stated that the confidential informant was at the house to "get a half" and that he said he had spoken to "Ced," who instructed him to "get a half from you." After completing the call, Ms. Sells told the confidential informant that "he said he was on his way." A man, whom the confidential informant identified at trial as the Defendant, entered the home a short time later and asked, "Hey, what's going on?" The confidential informant relied, "Nothing much. Hey, um, does this have fentanyl in it?" Both the Defendant and Ms. Sells denied that the substance contained fentanyl. Ms. Sells asked for "a toot," and the confidential informant refused. He asked the Defendant, "Let's see, eighty?" The Defendant replied, "Yeah." The confidential informant could be heard counting money and said to the Defendant, "Here you go." The Defendant and the confidential informant both left the house, and the confidential informant called out, "Appreciate you, Mickey."

Upon returning to the officers, the confidential informant gave Investigator Arnold a small amount of brown powder, which Investigator Arnold believed to be heroin. Investigator Arnold testified that he suspected the brown powder also contained fentanyl based upon the prior controlled drugs buys at the house and because the majority of heroin that the officers had been obtaining in other controlled drug buys at that time contained fentanyl. Officers searched the confidential informant's person and his vehicle and did not locate any weapons, drugs, or cash. The confidential informant did not have any pending charges and was paid for his participation.

- 3 -

The brown powder was sent to the Tennessee Bureau of Investigation for testing. The test results established that the brown powder had a net weight of .46 grams without the packaging and contained both heroin, a Schedule I controlled substance, and fentanyl, a Schedule II controlled substance. The forensic scientist who tested the powder was unable to determine the amount of heroin and fentanyl that was in the powder.

Based upon this evidence, the jury convicted the Defendant of the sale of heroin, the delivery of heroin, the sale of fentanyl, and the delivery of fentanyl. The jury imposed fines of $50,000 for each of the heroin offenses and $25,000 for each of the fentanyl offenses.

## Sentencing Hearing

The trial court held a sentencing hearing for the Defendant's drug convictions, as well as for his conviction of theft of property valued at under $1,000 in another case. The State presented the presentence report and certified judgments of prior convictions, establishing that the fifty-nine-year-old Defendant had a criminal history that spanned approximately thirty-nine years. The parties agreed that the Defendant was a Range III, persistent offender.

The State agreed that the heroin convictions and the accompanying fines would merge and that the fentanyl convictions and the accompanying fines would merge. The State requested that the trial court impose the fines found by the jury. The defense requested that the trial court "revisit" the fines imposed by the jury, arguing that the Defendant did not have the ability to pay the fines because he was indigent and was going to be required to serve a lengthy prison sentence.

The trial court found that the Defendant was a Range III, persistent offender and applied the following enhancement factors: (1) the Defendant had a previous history of criminal convictions or behavior, in addition to those necessary to establish the appropriate range; (2) the Defendant was a leader in the commission of the offenses, which involved two or more criminal actors; (8) the Defendant, prior to trial or sentencing, failed to comply with the conditions of a sentence involving release into the community; and (13) the Defendant was released on bond when he committed the felony offenses. *See* T.C.A. § 40-35-114(1), (2), (8), (13). The trial court found that no mitigating factors applied.

The trial court sentenced the Defendant to thirty years for each of the heroin convictions and fifteen years for each of the fentanyl offenses. The trial court merged the two heroin convictions and the two fentanyl convictions and imposed the fines of $50,000 for the heroin convictions and $25,000 for the fentanyl convictions as found by

the jury. The trial court ordered the Defendant to serve his sentences for his drug convictions concurrently to each other but consecutively to his sentence of eleven months and twenty-nine days for his unrelated theft conviction.

The Defendant filed a motion for new trial, which the trial court denied following a hearing. The Defendant appeals, arguing that the evidence is insufficient to support his convictions and that his fines are excessive.

## ANALYSIS

### A. Sufficiency

The Defendant contends that the evidence is insufficient to support his convictions, arguing that the evidence only supports a conviction for casual exchange of drugs. The State responds that the evidence is sufficient to establish that the Defendant sold and delivered heroin and fentanyl. We agree with the State.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

It is an offense to either knowingly deliver or sell a controlled substance. T.C.A. § 39-17-417(a)(2), (3). The sale or delivery of heroin, a Schedule I controlled substance, is a Class B felony. T.C.A. §§ 39-17-406(c)(11); 39-17-417(b). The sale or delivery of fentanyl, a Schedule II controlled substance, is a Class C felony. T.C.A. §§ 39-17-408(c)(9); 39-17-417(c)(2)(A).

The offense of casual exchange is defined in Tennessee Code Annotated section 39-17-418(a), which provides, "It is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice." The casual exchange of a controlled substance is a Class A misdemeanor. T.C.A. § 39-17-408(c)(1). Section 39-17-419 provides:

> It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing. It may be inferred from circumstances indicating a casual exchange among individuals of a small amount of a controlled substance or substances that the controlled substance or substances so exchanged were possessed not with the purpose of selling or otherwise dispensing in violation of § 39-17-417(a). The inferences shall be transmitted to the jury by the trial judge's charge, and the jury will consider the inferences along with the nature of the substance possessed when affixing the penalty.

Tennessee courts have recognized that a "casual exchange" is "an exchange made without design" and may include a transaction involving money. *State v. Donald L. Haynes*, No. E2000-00672-CCA-R3-CD, 2001 WL 416729, at * (Tenn. Crim. App. Apr. 24, 2001) (citing *State v. Helton*, 507 S.W.2d 117, 120 (Tenn. 1974)); *see State v. Richard W. Shelton*, No. M2017-00240-CCA-R3-CD, 2017 WL 4004257, at *6 (Tenn. Crim. App. Sept. 11, 2017). "[A] casual exchange is simply the transfer of drugs without the characteristics of bargaining, pecuniary motive, and design typical of a sale. Thus, a common example of a casual exchange is a spontaneous passing of a small amount of drugs at a party." *State v. Edward P. Harris*, No. 01C01-9810-CR-00392, 2000 WL 19536, at *3 (Tenn. Crim. App. Jan. 13, 2000); *see Richard W. Shelton*, 2017 4004257, at *6; *State v. Copeland*, 983 S.W.2d 703, 708 (Tenn. Crim. App. 1998). Whether a transaction constitutes a casual exchange must be determined from all the facts and circumstances of the case. *Helton*, 507 S.W.2d at 120-21. This court has identified the following facts and circumstances as indicating that the transaction was not a casual exchange:

[A] lack of evidence that the defendant gave the drugs to the buyer out of friendship or as a friendly gesture, no evidence reflecting anything other than a pecuniary motive for the transfer of the drugs, no prior relationship between the defendant and the buyer, and no reason for the defendant and the buyer to be together, other than for the buyer to purchase drugs.

*Donald L. Haynes*, 2001 WL 416729, at \*4 (internal citations omitted); *see Richard W. Shelton*, 2017 4004257, at \*6.

When taken in the light most favorable to the State, the evidence presented at trial established that the confidential informant set up a meeting to purchase heroin. He contacted Mr. Hopgood, who was unavailable but directed the confidential informant to his home. Officers provided the confidential informant with $80 to purchase one-half gram of heroin, and the officers placed audio and video recording devices on his person. When the confidential informant arrived at the home, he asked for the Defendant, who was not there. Ms. Sells said she would call the Defendant, made a call, and stated over the telephone that the confidential informant was at the home to "get a half" and that he had stated that "Ced" instructed him to "get a half from you." The Defendant arrived shortly thereafter and gave the confidential informant the drugs, which were later determined to contain both heroin and fentanyl. The confidential informant gave the money to the Defendant, and they both left the home.

Unlike a casual exchange, the transaction was designed or planned in advance. The Defendant did not give the drugs to the confidential informant as a friendly gesture, and there was no reason for them to be together, other than for the confidential informant to purchase drugs. The evidence reflects that the Defendant's motive for providing the drugs to the confidential informant was solely for pecuniary gain. Accordingly, we conclude that the evidence is sufficient to support the Defendant's convictions.

## B. Fines

The Defendant challenges his fines as excessive and maintains that the trial court failed to make any findings in upholding the amount of the fines imposed by the jury. The Defendant urges this court to conduct a de novo review of the issue and to reduce the amount of the fines. The State concedes that the trial court failed to make any findings in upholding the fines imposed by the jury and maintains that this court should remand the matter to the trial court to make such findings. We agree with the State.

The Defendant was subject to minimum fines of $2,000 and maximum fines of $100,000 for each of his convictions of selling and delivering heroin and fentanyl. *See*

T.C.A. §§ 39-17-417(b), (c)(2)(A); 39-17-428(b)(9). When a criminal offense is punishable by a fine in excess of $50.00, the jury is responsible for setting a fine, if any, within the ranges provided by the legislature. T.C.A. § 40-35-301(b). "When imposing sentence, after the sentencing hearing, the [trial] court shall impose a fine, if any, not to exceed the fine fixed by the jury." *Id.* However, "the trial court may not simply impose the fine as fixed by the jury." *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997). Rather, the trial court's imposition of a fine, within the limits set by the jury, must be based upon the factors provided in the statutory sentencing act, including "the defendant's ability to pay that fine, and other facts of judgment involved in setting the total sentence." *State v. Taylor*, 70 S.W.3d 717, 723 (Tenn. 2002) (citation and quotation omitted). Although the defendant's ability to pay should be considered, it is not a controlling factor. *State v. Butler*, 108 S.W.3d 845, 854 (Tenn. 2003). The trial court "must also consider other factors, including prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors that are relevant to an appropriate, overall sentence." *Taylor*, 70 S.W.3d at 723 (citing *Blevins*, 968 S.W.2d at 895). "The seriousness of a conviction offense may also support a punitive fine." *Id.* (citing *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996).

This court reviews fines as part of the sentence. *See Taylor*, 70 S.W.3d at 722-23; *State v. Bryant*, 805 S.W.2d 762, 767 (Tenn. 1999). Accordingly, this court reviews the fines imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *See State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012); *State v. Ashley K. Moyers*, No. E2013-01608-CCA-R3-CD, 2014 WL 2902253, at *7 (Tenn. Crim. App. June 25, 2014). The trial court made no findings in imposing the total fine of $75,000 fixed by the jury. As a result, the trial court's decision is not entitled to a presumption of reasonableness, and we may not defer to the trial court's exercise of its discretionary authority. *See State v. Pollard*, 432 S.W.3d 851, 863-64 (Tenn. 2013). While the Defendant requests that this court conduct a de novo review and impose appropriate fines, the factors to be considered and weighed in imposing a fine require a fact-intensive inquiry. Furthermore, where the trial court fails to place on the record any reason for a particular sentencing decision, the most appropriate action is to remand the case to the trial court for reconsideration. *See Bise*, 380 S.W.3d at 705, n.41. Therefore, we reverse the trial court's imposition of the fines and remand for further findings based upon consideration of the relevant factors.

## CONCLUSION

We reverse the fines imposed by the trial court and remand for findings based upon the relevant factors. We otherwise affirm the judgments of the trial court.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE