# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### January 5, 2022 Session

## STATE OF TENNESSEE v. JOHNNY JACKSON, JR.

**Appeal from the Circuit Court for Madison County**
**No. 20-345   Donald H. Allen, Judge**

_____

**No. W2021-00208-CCA-R3-CD**

_____

A Madison County grand jury indicted the defendant, Johnny Jackson, Jr., for aggravated kidnapping, aggravated assault by strangulation, and domestic assault. After a trial, a jury convicted the defendant of aggravated assault by strangulation and domestic assault and acquitted the defendant on the charge of aggravated kidnapping. Following a sentencing hearing, the trial court imposed concurrent terms of fifteen years for aggravated assault and eleven months and twenty-nine days for domestic assault to be served in the Tennessee Department of Correction. The trial court also affirmed the total effective fine of $2500 imposed by the jury. On appeal, the defendant contends the trial court erroneously relied on an inapplicable enhancement factor and failed to find any mitigation, and therefore, erred in sentencing the defendant to the maximum term of fifteen years. Additionally, the defendant claims the trial court erred in affirming the fine imposed by the jury without conducting the proper analysis and review. After reviewing the record and considering the applicable law, we conclude the trial abused its discretion in applying one enhancement factor, failing to find any mitigation despite proof of the same in the record, and failing to conduct the proper analysis of the fine imposed by the jury. Therefore, we modify the defendant's sentence for aggravated assault to thirteen years and remand the matter to the trial court for the limited purpose of properly reviewing the jury imposed fine.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. ROSS DYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

Jessica F. Butler, Assistant Public Defender, Franklin, Tennessee (on appeal) and Gregory Gookin, Assistant Public Defender, Jackson, Tennessee (at trial), for the appellant, Johnny Jackson, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Ronald L. Coleman, Assistant Attorney General; Jody Pickens, District Attorney General; and Joshua Dougan, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On October 16, 2019, the victim, Jessica Jackson, was working at the Dollar Tree in Jackson, Tennessee. That evening, she left work between 5:00 and 6:00 p.m. and found the defendant, who she described as "antsy," waiting for her in the parking lot. Though the defendant and the victim were married, they were not living together at the time because of the defendant's drug use. While sitting in the victim's car in the Dollar Tree parking lot, the defendant asked the victim to drive him to buy drugs for the both of them. When the victim refused, the defendant "grabbed me by the back of my head – my hair by the back of my head, and he told me that, 'We're gonna go. You're gonna take me.'" The victim testified that the defendant then placed a box cutter to her throat and stated, "If you think that you're going to tell me no, you're not going to. I will show you." After being threatened, the victim drove the defendant to buy crack cocaine.

After the defendant purchased the drugs, the two returned to the victim's apartment where they both "did the drugs." The victim described the defendant as paranoid. According to the victim, "[the defendant] was accusing me of cheating on him. He accused me of the people outside knocking on the windows, and since I won't come and look at the noise with him, that means that I'm signaling to people to come help me, to – that I want to go and be with them, not that I want to be there with [the defendant]." The victim also described the defendant as "extremely jealous and agitated." The defendant refused to allow the victim to leave his presence, and anytime the victim stood up and attempted to move around the apartment, the defendant would ask where she was going. When she tried to make a run for the door, the defendant knocked her to the ground and told her she was "not going anywhere" and was "not calling the cops." At some point during the evening, the defendant jumped on top of the victim, pinning her to the ground, and started punching and choking her. The defendant then suddenly stopped "and it was like it was nothing."

The next morning, the defendant told the victim they were leaving and instructed her to get dressed, clean her face, and "put some makeup on so [she did not] look so bad." According to the victim, the defendant, while looking at the victim's face, stated, "I can't believe I did that. I'm sorry." The defendant then got ice and put it on the victim's bruises.

After leaving the victim's apartment, the two drove around before stopping at the Dollar General so the defendant could get a snack. When the defendant excited the vehicle, he left the keys and the victim in the vehicle. As soon as the defendant entered the store, the victim drove to a gas station down the street where she called 911. Officers responded to the 911 call and met the victim at the gas station where they took photographs of her injuries and took her statement. After speaking with the officers at the gas station, the victim went to the Safe Hope Center to "file an official report."

On cross-examination, the victim stated she met the defendant between 5:00 and 6:00 p.m. that evening, but they did not purchase the drugs until 10:00 p.m. The victim, however, could not account for the four to five hours between meeting the defendant and buying the drugs. The victim also admitted she told officers that the defendant left the apartment at some point after they had returned from buying drugs and that she had locked the door after the defendant left. When asked if she remembered telling the police they had fallen asleep at some point that evening and did not wake until 1:00 p.m. the next day, the victim stated, "I don't remember specifically saying that, no." Finally, the victim testified that on October 30th, about two weeks after the incident, she found a box cutter in her apartment and turned it over to law enforcement.

Following deliberations, the jury found the defendant guilty of aggravated assault by strangulation and domestic assault. The jury acquitted the defendant on the charge of aggravated kidnapping. The trial court subsequently sentenced the defendant to a maximum term of fifteen years for aggravated assault and eleven months and twenty-nine days for domestic assault with the terms to be served concurrently to one another but consecutively to his prior sentence from Weakley County. This timely appeal followed.

*Analysis*

On appeal, the defendant contends the trial court erred in sentencing him to the maximum sentence. More specifically, the defendant insists the trial court erred in finding the defendant possessed a deadly weapon during the commission of the offense, placing undue weight on the defendant's prior criminal history, and failing to find any mitigation, despite proof of the defendant's mental health issues and chronic drug use. Additionally, the defendant claims the trial court erred in affirming the fine imposed by the jury without conducting the proper analysis and review. The State submits the trial court properly sentenced the defendant to the maximum term and properly affirmed the fine imposed by the jury. However, after our review of the record and the applicable law, we conclude the trial court abused its discretion in applying enhancement factor (9) as it was not supported by the record and in failing to find and/or even consider any mitigation despite proof of the defendant's mental health history. Additionally, the trial court erred in affirming the fine imposed by the jury without conducting the appropriate analysis. Accordingly, we reverse

- 3 -

the defendant's sentence for aggravated assault, impose a term of thirteen years, and remand the matter to the trial court for the limited purpose of conducting a proper review and analysis of the fine imposed by the jury.

This Court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012).

A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing Tenn. Code Ann. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* Tenn. Code Ann. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors are reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The defendant contests the trial court's application of enhancement factor (9) – the defendant possessed or employed a deadly weapon during the commission of the offense, and the trial court's failure to find and/or apply any mitigation despite proof of the defendant's struggles with drugs and alcohol and mental health issues. Additionally, the defendant contends the trial court erred in affirming the fines imposed by the jury without conducting a proper analysis.

Here, the trial court found four enhancement factors applicable to the defendant's case: (1) the defendant has a previous history of criminal convictions or behavior in addition to those necessary to establish the appropriate range; (8) the defendant failed to comply with conditions of a sentence involving release into the community; (9) the defendant possessed a deadly weapon during the commission of the offense; and (13) the

defendant was on probation at the time the felony was committed. *See* Tenn. Code Ann. § 40-35-114 (1), (8), (9), (13)(D). Concerning the mitigation requested and presented by the defendant, the trial court stated, "I just don't find any mitigating factors to be present in this case. He indicated he has had a past drug abuse history of cocaine, marijuana, and ecstasy. So, you know, I don't show any mitigating factors to be present."

Initially, we address the defendant's contention that the trial court placed undue emphasis on his prior history of criminal convictions and behavior. As found by the trial court, the defendant's prior criminal history spans twenty plus years and consists of a plethora of criminal convictions and behavior, including but not limited to, traffic violations, drug use and possession, sexual battery, evading and resisting arrest, burglary, false imprisonment, and grand larceny. Additionally, the defendant violated the terms of the Sexual Offender Registration and Monitoring Act and violated the terms of his probationary sentences on several occasions. Accordingly, the record supports the trial court's application of enhancement factors (1), (8), and (13). While the defendant takes issue with the trial court's lengthy discussion concerning his prior history, we note that three of the enhancement factors relied on by the trial court directly relate to the defendant's prior criminal history and that the trial court's lengthy discussion of the that history is supportive of the great weight it placed on those factors. Thus, we find no error in the application of those factors.

Next, however, we review the trial court's finding that the defendant possessed a deadly weapon during the commission of the offense. Per the indictment and the proof at trial, all three offenses with which the defendant was charged took place after the defendant and the victim bought drugs and returned to the victim's apartment. The kidnapping charge, on which the defendant was acquitted, was based on the defendant's alleged refusal to allow the victim to leave the apartment or summon for help while in the apartment. The remaining charges on which the defendant was convicted, aggravated assault by strangulation and domestic assault, also took place while the defendant and the victim were in the apartment. While there was testimony that the defendant produced a box cutter when he was initially in the car with the victim prior to buying drugs, there is no proof in the record alleging that the defendant possessed the box cutter during the offenses that took place in the apartment. Per the statute, the enhancement factor is applicable when a defendant possesses the deadly weapon *during the commission of the offense*. *See* Tenn. Code Ann. § 40-35-114 (9) (emphasis added). The proof at trial only establishes that the defendant possessed the weapon some five plus hours *prior* to the commission of the offense not *during* the commission of the offenses charged or on which the defendant was convicted. Thus, this factor is not applicable to the defendant's case and should not have been relied on by the trial court.

Concerning the trial court's determination that its review of the record failed to produce any mitigation proof, we again disagree. During the sentencing hearing, defense counsel noted for the trial court and requested mitigation based on the defendant's struggles with substance abuse and mental health issues. Specifically, defense counsel argued to the court,

> But we would ask the [c]ourt also in mitigation to note, there is a history through [the defendant]'s own, I think, honest admission of substance abuse spanning many years that he's tried to seek help in the past. He's been there for – been to a treatment program he thought perhaps somewhere in Kentucky, but he does have other issues. He's previously been diagnosed with schizophrenia, paranoia and depression, does receive some medications for that, and so we would ask the Court to consider that in mitigation as well.

Additionally, the pre-sentence report notes both the defendant's substance abuse issues and attempts at treatment and the fact that the defendant has been "diagnosed with schizophrenia, paranoia, and depression" for which he was prescribed medication. Moreover, the Strong R Needs Report states that the "[defendant] has a *document[ed] or verified official* mental health diagnosis." (emphasis added). The report also states that the "[a]ssessor observed one or more indicators that suggest mental health evaluation may be in order" and that "[s]ubject has had two or more in-patient stays for mental health problems during his/her lifetime." Finally, at trial, the victim testified concerning the defendant's struggles with drug addiction and described the defendant as "acting paranoid," "psychotic," and a person with "a lot of rage."

Despite the above referenced proof, the trial court, when sentencing the defendant, stated, "I just don't find any mitigating factors to be present in this case. He indicated he has had a past drug abuse history of cocaine, marijuana and ecstasy. So, you know, I don't show any mitigating factors to be present." Clearly, the trial court's determination that no mitigation proof was contained within the record was erroneous. In its brief and during oral argument before this Court, the State argued that the proof of mitigation was submitted by the defendant and was, therefore, self-serving. This Court is taxed to find a scenario in which mitigation proof would not be considered self-serving. The State also argues the trial court's comments are a recognition of mitigation but also a finding by the trial court that little or no weight should be applied to the mitigation proof. This argument fails as well. A complete review of the sentencing transcripts reveals the trial court went through great efforts in discussing each enhancement factor applicable to the defendant's sentence and the weight the trial court assigned to that factor. However, in "considering" the mitigation proof offered by the defendant, the trial court, as noted *supra*, simply stated it did not find "*any mitigation factors to be present in this case.*" (emphasis added).

Based on the proof presented at trial and during the sentencing hearing, the record clearly established the existence of mitigation proof in the form of prolonged drug history and mental health issues, and therefore, the mitigation proof should have been considered by the trial court under either factor (8), the defendant was suffering from a mental condition that significantly reduced his culpability, or the "catch-all" factor (13), any other factor consistent with the purposes of sentencing. *See* Tenn. Code Ann. § 40-35-113 (8), (13). The mitigation offered by the defendant and established in the record should have been considered and addressed by the trial court even if the trial court ultimately assigned little or no weight to it. The trial court's failure to recognize or consider the mitigation proof submitted amounts to an abuse of discretion and removes the presumption of reasonableness of the defendant's sentence.

Finally, the defendant challenges his fines as excessive and maintains the trial court failed to make any findings in upholding the amount of the fines imposed by the jury. The defendant urges this Court to conduct a de novo review of the issue and to reduce the amount of the fines. The State concedes that the trial court failed to make any findings in upholding the fines imposed by the jury; however, the State contends the fines are appropriate and argues they should be affirmed. Upon our review of the record, it is clear the trial court failed to conduct a proper review of the fines imposed by the jury; however, based on the lack of proof and analysis in the record before us, we remand for further proceedings based upon consideration of the appropriate and relevant factors.

The defendant was subject to a maximum fine of $10,000 for his conviction for aggravated assault and a maximum fine of $2500 for his conviction for domestic assault. *See* Tenn. Code Ann. §§ 40-35-111(b)(3), (e)(1). In the instant matter, the jury imposed fines of $1000 and $1500, respectively. When a criminal offense is punishable by a fine in excess of $50.00, the jury is responsible for setting a fine, if any, within the ranges provided by the legislature. Tenn. Code Ann. § 40-35-301(b). "When imposing sentence, after the sentencing hearing, the [trial] court shall impose a fine, if any, not to exceed the fine fixed by the jury." *Id.* However, "the trial court may not simply impose the fine as fixed by the jury." *State v. Blevins*, 968 S.W.2d 888, 895 (Tenn. Crim. App. 1997). Rather, the trial court's imposition of a fine, within the limits set by the jury, must be based upon the factors provided in the statutory sentencing act, including "the defendant's ability to pay that fine, and other facts of judgment involved in setting the total sentence." *State v. Taylor*, 70 S.W.3d 717, 723 (Tenn. 2002) (citation and quotation omitted). Although the defendant's ability to pay should be considered, it is not a controlling factor. *State v. Butler*, 108 S.W.3d 845, 854 (Tenn. 2003). The trial court "must also consider other factors, including prior history, potential for rehabilitation, financial means, and mitigating and enhancing factors that are relevant to an appropriate, overall sentence." *Taylor*, 70 S.W.3d at 723 (citing *Blevins*, 968 S.W.2d at 895). "The seriousness of a conviction

- 7 -

offense may also support a punitive fine." *Id.* (citing *State v. Alvarado*, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996)).

This Court reviews fines as part of the sentence. *See Taylor*, 70 S.W.3d at 722-23; *State v. Bryant*, 805 S.W.2d 762, 767 (Tenn. 1999). Accordingly, this Court reviews the fines imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *See Bise*, 380 S.W.3d at 707; *State v. Ashley K. Moyers*, No. E2013-01608-CCA-R3-CD, 2014 WL 2902253, at *7 (Tenn. Crim. App. June 25, 2014). The trial court made no findings in imposing the total fine of $2500 fixed by the jury. As a result, the trial court's decision is not entitled to a presumption of reasonableness, and we may not defer to the trial court's exercise of its discretionary authority. *See State v. Pollard*, 432 S.W.3d 851, 863-64 (Tenn. 2013). While the defendant requests this Court conduct a de novo review and impose appropriate fines, the factors to be considered and weighed in imposing a fine require a fact-intensive inquiry. Furthermore, where the trial court fails to place on the record any reason for a particular sentencing decision, the most appropriate action is to remand the case to the trial court for reconsideration. *See Bise*, 380 S.W.3d at 705, n.41. Therefore, we reverse the trial court's imposition of the fines and remand for further findings based upon consideration of the relevant factors.

While we recognize that *Bise* and its progeny hold that there are no "magic words" that must be uttered by the trial court and that the misapplication of an enhancement factor alone is not sufficient to amount to an abuse of discretion and remove the presumption of reasonableness of a sentence, we also recognize that our supreme court and this Court have also held that more than just lip service must be paid to the purposes and principles of sentencing in order to maintain the presumption. Specifically, our supreme court has noted that

> the imposition of a sentence on a criminal defendant is one of the most important decisions that trial courts are called upon to make because they invariably reduce a person's liberty, often eliminating it entirely. Accordingly, it is imperative that trial judges approach the process only after thoroughly familiarizing themselves with the applicable provisions of our Sentencing Act.

> Moreover, although we emphasize that there are no "magic words" that trial judges must pronounce on the record, it is also critical that, in their process of imposing sentence, trial judges articulate fully and coherently the various aspects of their decision as required by our statutes and case law. As we recently reiterated, "our ruling in *Bise* specifically requires trial courts to articulate the reasons for the sentence in accordance with the purposes and

principles of sentencing in order for the abuse of discretion standard with a presumption of reasonableness to apply on appeal." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013) (citing *Bise*, 380 S.W.3d at 698-99).

*State v. Trent*, 533 S.W.3d 282, 292 (Tenn. 2017).  Based on the foregoing, it is clear that a trial court is required to articulate how the enhancement and mitigating factors it finds applicable and the weight applied to each furthers and is in line with the purposes and principles of sentencing.  With this framework in mind, we find that when a trial court simply states it has "considered the purposes and principles of sentencing," misapplies an enhancement factor that is not supported by the proof presented at trial, refuses to acknowledge a mitigating factor that is fully supported by the proof presented, fails to conduct the proper review and analysis of the fine imposed by the jury, and then fails to articulate how all these things relate to and further the purposes and principles of sentencing, then the trial court has abused its discretion and the presumption of reasonableness is removed.

Based on our conclusion that the trial court misapplied enhancement factor (9) because no proof supported the factor, the trial court's failure to find and even consider the mitigation proof offered concerning the defendant's mental health, and the trial court's failure to properly review and analyze the fines imposed by the jury, we determine the trial court abused its discretion in sentencing the defendant.  Because we have determined enhancement factor (9) is not applicable and the defendant is entitled to some mitigation based on his mental health issues, we reverse the defendant's sentence of fifteen years for aggravated assault and impose a sentence of thirteen years to be served concurrently with his sentence of eleven months and twenty-nine days in the Tennessee Department of Correction.  Additionally, as noted, we remand the matter for review of the fines imposed by the jury.

## *Conclusion*

Based on the foregoing, we reverse the defendant's sentence for aggravated assault, amending the sentence to a term of thirteen years, and remand the matter to the trial court for a hearing on the imposition of fines consistent with this opinion and the applicable law.

_____

J. ROSS DYER, JUDGE